DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
VINCE CHHABRIA, State Bar #208557
Deputy City Attorneys
City Hall, Room 234
#1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4674
Facsimile:      (415) 554-4699
E-Mail:         vince.chhabria@sfgov.org

E-filing

*FILED*
JUL 2 1 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CRB

| | |
|---|---|
| CALIFORNIA TOW TRUCK ASSOCIATION,<br><br>        Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO and DOES 1-50,<br><br>        Defendants. | Case No.  CV 10  3184<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (FEDERAL QUESTION) BY DEFENDANT CITY AND COUNTY OF SAN FRANCISCO [28 U.S.C. § 1441(A); F.R.C.P. 38(B)]**<br><br>Date Action Filed:     July 12, 2010<br>Trial Date:              None Set<br><br>**Attached Documents:**<br>Exhibit A:  Superior Court Register of Actions<br>Exhibit B:  Summons, Complaint, Notice to Plaintiff<br>Exhibit C:  Plaintiff's Petition for Decl. Relief and supporting papers |

NOTICE OF REMOVAL
CASE NO.

1

Exhibit A

## Superior Court of California, County of San Francisco

Case Number: CGC-10-501458

Title: CALIFORNIA TOW TRUCK ASSOCIATION VS. CITY AND COUNTY OF SAN FRANCISCO et al

Cause of Action: OTHER NON EXEMPT COMPLAINTS (Judicial Review)

Generated: Jul-20-2010 3:05 pm PST

Register of Actions    Parties    Attorneys    Calendar    Payments    Documents

# Register of Actions

Date Range: First Date Jul-12-2010      Last Date Jul-20-2010      (Dates must be entered as MMM-DD-YYYY)

Descending Date Sequence        ALL FILING TYPES        Submit

| Date | Proceedings | Document | Fee |
|------|-------------|----------|-----|
| JUL-13-2010 | NOTICE OF HEARING ON VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF RE VALIDITY AND ENFORCEMENT OD SAN FRANCISCO POLICE CODE SECTION 3000 ET SEQ. AND 3050, PROOF OF SERVICE, POINTS AND AUTHORITIES, DECLARATION FILED BY PLAINTIFF CALIFORNIA TOW TRUCK ASSOCIATION HEARING SET FOR AUG-19-2010 AT 09:30 AM IN DEPT 302 | | 40.00 |
| JUL-12-2010 | NOTICE TO PLAINTIFF | View | |
| JUL-12-2010 | OTHER NON EXEMPT COMPLAINTS, COMPLAINT FILED BY PLAINTIFF CALIFORNIA TOW TRUCK ASSOCIATION AS TO DEFENDANT CITY AND COUNTY OF SAN FRANCISCO DOES 1 TO 50 SUMMONS ISSUED, JUDICIAL COUNCIL CIVIL CASE COVER SHEET FILED CASE MANAGEMENT CONFERENCE SCHEDULED FOR DEC-10-2010 PROOF OF SERVICE DUE ON SEP-10-2010 CASE MANAGEMENT STATEMENT DUE ON NOV-29-2010 | View | 370.00 |

Exhibit B

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

City and County of San Francisco

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

California Tow Truck Association

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Civic Center Courthouse | CASE NUMBER:<br>*(Número del Caso):* **CGC-10-501458** |
|---|---|

San Francisco County Superior Court 400 McAllister Street
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Patrick Whalen 1725 Capitol Avenue, Sacramento CA 95811 (916) 448-2187

CLERK OF THE COURT

| DATE:<br>*(Fecha)* | JUL 1 2 2010 | Clerk, by<br>*(Secretario)* _____ | _____, Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)  [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*

4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

ORIGINAL

BY FACSIMILE

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346
   E-mail: attorneys@ellisonlawoffices.com
6
   Attorneys for Plaintiff
7

SUMMONS ISSUED

**FILED**
San Francisco County Superior Court

JUL 1 2 2010

CLERK OF THE COURT
BY: _____
Deputy Clerk

BY FACSIMILE

8

9              SUPERIOR COURT OF CALIFORNIA

10               COUNTY OF SAN FRANCISCO

11

| | |
|---|---|
| CALIFORNIA TOW TRUCK ASSOCIATION | Case No. **CGC-10-501458** |
| Plaintiff, vs. | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF REGARDING VALIDITY AND ENFORCEMENT OF SAN FRANCISCO POLICE CODE SECTIONS 3000 ET SEQ. AND 3050 ET SEQ.** |
| CITY AND COUNTY OF SAN FRANCISCO and DOES 1-50 | (Code of Civ. Proc. §§ 525 and 1060) |
| Defendants. | Date:<br>Time:<br>Dept.: |

**INTRODUCTION**

The City and County of San Francisco (hereafter "the City") has enacted an ordinance that prohibits any person from driving a tow truck within the City without first obtaining a permit from the Chief of Police. Another ordinance prohibits any towing firm from doing business within the City without first obtaining a permit for the firm. This permit scheme is preempted by

1

1  state and federal law, and for that reason should be declared invalid. Moreover, the City should
2  be enjoined from enforcing the invalid ordinances.

3      This petition seeks injunctive and declaratory relief as follows:

4  1)  a declaration that San Francisco Police Code sections 3000 et seq. and 3050 et seq. are
5      invalid because they have been preempted by state and federal law;

6  2)  a declaration that the City may not constitutionally impound tow trucks alleged to be in
7      violation of the City's permit scheme;

8  3)  a declaration that the permit scheme is an unconstitutional regulation of interstate
9      commerce;

10 4)  an injunction prohibiting the City from enforcing the above ordinances;

11 5)  attorneys fees and costs of suit in this action

12

13                          **JURISDICTIONAL ALLEGATIONS**

14 **I.  Parties**

15     1. Plaintiff CALIFORNIA TOW TRUCK ASSOCIATION ("CTTA") is, and at all times
16 herein mentioned was, a nonprofit corporation organized and existing under the laws of the state
17 of California, with its principal place of business in the County of Riverside, State of California.
18 CTTA represents more than 1,000 towing companies doing business throughout the state of
19 California. Many member companies do business in and around the City and County of San
20 Francisco.

21     2. Defendant CITY AND COUNTY OF SAN FRANCISCO ("the City") is a charter city
22 which enacts municipal ordinances through its duly elected Board of Supervisors.

23     3. Defendants DOES 1 through 50 are City officials and other persons presently unknown
24 who may be responsible for authorizing or enforcing the ordinances challenged herein. Plaintiff
25 will amend this petition when the names and capacities of such persons are known.

26

27 **II. Venue**

28

                                        2

4.  Defendant City is located within the City and County of San Francisco, and thus venue is proper in this Court pursuant to Code of Civil Procedure section 394.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

5.  The City and County of San Francisco Police Code contains two articles governing permits for the towing industry. Article 30 governs "tow cars" which are defined in the same manner as in the Vehicle Code. (SF Police Code section 3001.) The Vehicle Code defines "tow truck" as follows:

> a motor vehicle which has been altered or designed and equipped for, and primarily used in the business of, transporting vehicles by means of a crane, hoist, tow bar, tow line, or dolly or is otherwise primarily used to render assistance to other vehicles. A "roll-back carrier" designed to carry up to two vehicles is also a tow truck. A trailer for hire that is being used to transport a vehicle is a tow truck. "Tow truck" does not include an automobile dismantlers' tow vehicle or a repossessor's tow vehicle.

(Vehicle Code section 615.) In 1988, this section (and others throughout the Vehicle Code) was amended to change "tow car" to "tow truck."

6.  San Francisco Police Code section 3000 provides:

> No person shall drive or operate a tow car within the City and County of San Francisco without first obtaining a permit from the Chief of Police hereinafter provided.

7.  In order to comply with the ordinance, all tow car drivers seeking to "drive or operate within the City" must obtain a permit and are required to have it in their possession at all times and to exhibit it to any peace officer on demand. (SF Police Code sec. 3007.)

8.  Obtaining a permit requires payment of various fees and submission of a variety of documents. (SF Police Code secs. 3002, 3003.)

9.  The Chief of Police shall issue a permit to an applicant unless the applicant has been convicted of certain theft or vehicle crimes within the past four years, or has "acted in violation of" those crimes, or has intentionally falsified any statement in the application. (SF Police Code sec. 3004.)

3

10. The permits are valid for a period of one year, and may then be renewed upon payment of additional fees. (SF Police Code sec. 3008.)

11. Any violation of the statutory scheme for tow car drivers is a misdemeanor punishable by a fine of up to $500, or incarceration for up to six months in jail, or both. (SF Police Code sec. 3012.)

12. Article 30.1 of the City and County of San Francisco Police Code governs "tow car firms." A tow car firm is defined as

> Any person, firm, partnership, association, corporation, or any other group or combination acting as a unit, excepting the United States, the State of California, and any political subdivision of either thereof, engaged in the business of transporting, removing, or storage of motor vehicles, including the owner/operator of any tow car as herein defined.

(SF Police Code sec. 3051.) That same section defines a tow car in terms virtually identical to the definition of "tow truck" in Vehicle Code section 615.

San Francisco Police Code section 3050 provides, in pertinent part:

> No person shall engage in or conduct business as a tow car firm within the City and County of San Francisco without first obtaining a permit from the Chief of Police as hereinafter provided.

11. Obtaining a tow car firm permit requires payment of various fees and submission of a variety of documents. (SF Police Code secs. 3052, 3053, 3058.)

12. Pursuant to San Francisco Police Code section 3054, the Chief of Police shall issue a tow car firm permit to an applicant unless he finds:

> (1) Applicant does not possess or cannot obtain the minimum amount of bodily injury and/or property damage insurance as required by the Chief of Police rules; or

> (2) The applicant does not possess the requisite tow car equipment or facilities reasonably necessary to operate a tow car business in such a manner as to adequately protect vehicles of the public that are towed and stored from damage or theft; or

> (3) The applicant has been convicted of theft, petty theft, theft of a vehicle, breaking or removing vehicle parts, malicious mischief to vehicle, check fraud,

4

Verified Complaint for Declaratory and Injunctive Relief

credit card fraud, driving under the influence of alcohol or drugs, vehicular manslaughter, reckless driving bodily injury, any sex offense which would cause the applicant to be registered as a sex offender, any unlawful carrying, use or possession of a firearm, any assault or battery (misdemeanor or felony), kidnapping, arson, extortion, murder, possession of alcoholic beverage, opened alcohol container, marijuana, or narcotic drug while driving, bailee tampering; or

(4) The applicant has knowingly falsified any statement contained in his application, or has knowingly omitted information in his application which could result in a denial of the permit; or

(5) The applicant does not possess or cannot obtain an FDIC-authorized bank credit card machine.

13. The tow car firm permits must be displayed in a prominent place within the business. (SF Police Code sec. 3055.)  In addition, every tow car firm must also display a brochure summarizing California law, available in three languages, and must maintain at least 50 copies of the brochure on the premises at all times. (SF Police Code sec. 3055.2, subd. (c).)

14. Tow car firm permits may be suspended or revoked by the Chief of Police for a variety of reasons, including charging "unauthorized fees," or employing any person as a tow car operator who has not been issued a valid permit by the San Francisco Police Department. (SF Police Code sec. 3056.)

15. The tow car firm permits are valid for a period on one year, and may then be renewed upon payment of additional fees. (SF Police Code sec. 3062.)

16. Any violation of the statutory scheme for tow car firms is a misdemeanor punishable by a fine of up to $500, or incarceration for up to six months in jail, or both. (SF Police Code sec. 3064.)

17. On or about March 30, 2010, a tow car was impounded by the San Francisco Police Department for failing to have a permit.  On or about April 4, 2010, another tow car which was towing a vehicle was also impounded by the San Francisco Police Department for failing to have a permit.

## FIRST CAUSE OF ACTION

5

**(Violation of Supremacy Clause)**

18. Plaintiff hereby incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

19. The Federal Aviation Administration Authorization Act of 1994 (the FAAAA) is codified at 49 U.S.C. sections 14501 et seq.

20. The FAAA prohibits any state or any political subdivision thereof from enacting or enforcing any law or regulation related to the price, route, or service of a motor carrier.

21. All CTTA members are motor carriers.

22. The City's permit scheme directly impacts the price, route, and service of the motor carrier members of CTTA, and is therefore preempted by federal law pursuant to the supremacy clause of Article VI of the United States Constitution.

## SECOND CAUSE OF ACTION

### (State Law Preemption)

23. Plaintiff hereby incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

24. Vehicle Code section 21 prohibits any municipality from enacting or enforcing any ordinance on the matters covered by the Vehicle Code unless expressly authorized by the Vehicle Code.

25. The City's permit scheme directly relates to matters covered by the Vehicle Code. There is no statutory authorization for the type of regulation of the towing industry encompassed by the City's permit scheme, and the entire scheme is therefore preempted by state law.

## THIRD CAUSE OF ACTION

### (State Law Preemption)

26. Plaintiff hereby incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

6

Verified Complaint for Declaratory and Injunctive Relief

1   27. Chapter 1 of Part 1.55 of Division 2 of the Revenue and Taxation Code is entitled "Motor

2   Carriers of Property Permit Fee." Section 7233 of that Chapter provides that no city or city and

3   county shall assess, levy, or collect an excise or license tax of any kind, character, or description

4   whatever upon the transportation business conducted by any for-hire motor carrier of property.

5       28. The City's permit scheme purports to levy and collect a variety of business taxes and fees

6   in connection with the application and renewal of the various permits required under the scheme.

7   These taxes are preempted by state law.

8

9                             **FOURTH CAUSE OF ACTION**

10                              **(Illegal Seizure)**

11      29. Plaintiff hereby incorporates by reference all of the foregoing paragraphs as if fully set

12  forth herein.

13      30. The Fourth Amendment to the United States Constitution prohibits the unreasonable

14  seizure of persons and property. Article 1, section 13 of the California Constitution also

15  prohibits the unreasonable seizure of persons and property.

16      31. The City has begun impounding tow cars allegedly in violation of the permit scheme.

17  Such impounds are not authorized by any law and are unreasonable and therefore

18  unconstitutional.

19

20                             **FIFTH CAUSE OF ACTION**

21                              **(Dormant Commerce Clause)**

22

23      32. Plaintiff hereby incorporates by reference all of the foregoing paragraphs as if fully set

24  forth herein.

25      33. The City's permit scheme is a form of regulation which benefits California towing firms

26  to the detriment of firms engaged in interstate commerce.

27

28                             **SIXTH CAUSE OF ACTION**

7

**(Complaint for Declaratory Relief)**

34. Plaintiff hereby incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

35. The City is actively enforcing the permit scheme on drivers on tow cars and tow car firms.

36. The permit scheme is in violation of state and federal law.

37. Judicial relief is urgently needed to prevent the City from continuing to enforce the illegal permit scheme.

38. As a result of the active enforcement of the permit scheme, many CTTA members are unable to continue or to grow their business within the City and County of San Francisco.

39. As a matter of law, the City lacks the authority to enact or enforce the permit scheme at issue in this case. The permit scheme is in direct conflict with existing state and federal statutes and is therefore unlawful, and Plaintiff has a reasonable likelihood of success on the merits.

40. Plaintiff desires a declaration of its rights and duties with respect to the permit scheme and the City's enforcement thereof. Unless the court issues an appropriate declaration of rights, the parties will not know whether the permit scheme is enforceable, and there will continue to be disputes and controversy surrounding the ordinance, and further litigation will likely result.

41. Such a declaration is necessary and appropriate at this time in order to avoid continued enforcement of the illegal permit scheme which would adversely affect the rights of Plaintiff CTTA and its members. The City's actions will result in irreparable injury and harm to CTTA and its members including the denial of the protection of the laws regarding their industry. The loss of such rights cannot be compensated fully by damages or other forms of legal relief. Plaintiff has no plain, speedy or adequate remedy at law, and for that reason, he seeks injunctive relief.

## SEVENTH CAUSE OF ACTION

8

**(Complaint for Injunctive Relief)**

42. Plaintiff hereby incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

43. All enforcement of the illegal permit scheme must be stopped in order to adequately protect the rights of Plaintiff and its members. Unless defendant is restrained by a preliminary and permanent injunction from enforcing the permit scheme, plaintiff will suffer great and irreparable injury in that its members will suffer immeasurable harm to their businesses. Plaintiff has no adequate remedy at law because pecuniary damages would not afford adequate relief because the damage is impossible to measure. The competitive advantages that may be gained or loss by compliance with the permit scheme are too large and numerous to accurately account.

44. Plaintiff and its members have a right to be free from unconstitutional and otherwise illegal ordinances. The loss of such rights cannot be compensated fully by damages or other forms of legal relief. Plaintiff has no plain, speedy or adequate remedy at law, and for that reason, he seeks injunctive relief.

///

///

9

**CONCLUSION**

WHEREFORE, Plaintiff CTTA respectfully prays that:

1. This Court issue a declaration that the City's permit scheme is preempted by federal law;

2. This Court issue a declaration that the City's permit scheme is preempted by state law;

3. This Court issue a declaration that the impounds of tow cars alleged to be in violation of the City's permit scheme is unconstitutional;

4. This court issue a declaration that the permit scheme is an unconstitutional regulation of interstate commerce;

5. This Court issue a preliminary and permanent injunction prohibiting Defendant from enforcing the permit scheme;

6. Plaintiff be awarded attorneys fees and costs of suit incurred in this action.

THE LAW OFFICES OF BROOKS ELLISON

Dated: July 8 2010

PATRICK J. WHALEN

Attorneys for Plaintiff
CALIFORNIA TOW TRUCK
ASSOCIATION

- 10 -

Verified Complaint for Declaratory and Injunctive Relief

CASE NUMBER: CGC-10-501458 CALIFORNIA TOW TRUCK ASSOCIATION VS. CITY AND COU

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **DEC-10-2010**

**TIME:** **9:00AM**

**PLACE:** **Department 212**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

Exhibit C

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346
   E-mail: attorneys@ellisonlawoffices.com
6
   Attorneys for Plaintiff
7

8

9                  SUPERIOR COURT OF CALIFORNIA

10                  COUNTY OF SAN FRANCISCO

11

12  CALIFORNIA TOW TRUCK ASSOCIATION          Case No.  CGC-10-501458

13              Plaintiff,                    **NOTICE OF HEARING ON VERIFIED**
                vs.                           **COMPLAINT FOR DECLARATORY**
14                                            **AND INJUNCTIVE RELIEF**
                                              **REGARDING VALIDITY AND**
15  CITY AND COUNTY OF SAN FRANCISCO          **ENFORCEMENT OF SAN FRANCISCO**
    and DOES 1-50                             **POLICE CODE SECTIONS 3000 ET**
16                                            **SEQ. AND 3050 ET SEQ.**
                Defendants.
17                                            (Code of Civ. Proc. §§ 525 and 1060)

18

19                                            Date:   August 19, 2010
                                              Time:   9:30 a.m.
20                                            Dept.:  302

21

22

23  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24      PLEASE TAKE NOTICE that on August 19, 2010, at 9:30 a.m. or as soon thereafter as

25  the matter may be heard in Department 302 of the above-entitled court, located at 400 McAllister

26  Street, San Francisco, California, Petitioner's complaint for declaratory and injunctive relief will

27  be heard.

28

                                        - 1 -

Notice of Hearing

1    The complaint will be based on the points and authorities previously filed with this Court,

2    and on such other oral and documentary evidence as may be submitted at the hearing on this

3    matter.

4

5                                    THE LAW OFFICES OF BROOKS ELLISON

6    Dated: July 13, 2010

7                                    PATRICK J. WHALEN

8                                    Attorneys for Plaintiff
9                                    CALIFORNIA ATTORNEYS,
                                     ADMINISTRATIVE LAW JUDGES AND
10                                   HEARING OFFICERS IN STATE
                                     EMPLOYMENT
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          - 2 -

Notice of Hearing



1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346`
   E-mail: attorneys@ellisonlawoffices.com
6
   Attorneys for Plaintiff
7

8

9                    SUPERIOR COURT OF CALIFORNIA

10                    COUNTY OF SAN FRANCISCO

11

12  CALIFORNIA TOW TRUCK ASSOCIATION      Case No.  CGC-10-501458

13              Plaintiff,                 POINTS AND AUTHORITIES IN
        vs.                                SUPPORT OF VERIFIED COMPLAINT
14                                         FOR DECLARATORY AND
    CITY AND COUNTY OF SAN FRANCISCO       INJUNCTIVE RELIEF REGARDING
15  and DOES 1-50                          VALIDITY AND ENFORCEMENT OF
                                           SAN FRANCISCO POLICE CODE
16              Defendants.                SECTIONS 3000 ET SEQ. AND 3050 ET
                                           SEQ.
17
                                           (Code of Civ. Proc. §§ 525 and 1060)
18

19
                                           Date:   August 19, 2010
20                                         Time:   9:30 a.m.
                                           Dept.:  302
21

22

23

24

25

26

27

28

ENDORSED
Superior Court of California

JUL 1 3 2010

CLERK OF THE COURT
BY:  WESLEY RAMIREZ
              Deputy Clerk

BY FACSIMILE

COPY

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346
   E-mail: attorneys@ellisonlawoffices.com
6
   Attorneys for Plaintiff
7

8

9               SUPERIOR COURT OF CALIFORNIA

10                COUNTY OF SAN FRANCISCO

11
     CALIFORNIA TOW TRUCK ASSOCIATION          Case No.  CGC-10-501458
12
13              Plaintiff,                     POINTS AND AUTHORITIES IN
           vs.                                 SUPPORT OF VERIFIED COMPLAINT
14                                             FOR DECLARATORY AND
                                               INJUNCTIVE RELIEF REGARDING
15   CITY AND COUNTY OF SAN FRANCISCO          VALIDITY AND ENFORCEMENT OF
     and DOES 1-50                             SAN FRANCISCO POLICE CODE
16                                             SECTIONS 3000 ET SEQ. AND 3050 ET
               Defendants.                     SEQ.
17
                                               (Code of Civ. Proc. §§ 525 and 1060)
18

19
                                               Date:   August 19, 2010
20                                             Time:   9:30 a.m.
                                               Dept.:  302
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................- 1 -

STATEMENT OF FACTS .......................................................................................................- 1 -

A. Introduction........................................................................................................- 1 -

B. The Towing Industry..........................................................................................- 2 -

C. The Permit Scheme ............................................................................................- 4 -

D. Tow Trucks Impounded by the City ..................................................................- 6 -

E. The Impacts of the Scheme ...............................................................................- 7 -

ARGUMENT...........................................................................................................................- 8 -

I. THE CITY'S PERMIT SCHEME IS PREEMPTED BY FEDERAL LAW .........................- 8 -

A. Principles of Preemption....................................................................................- 8 -

B. The City's Permit Scheme Is Preempted............................................................- 9 -

II. THE SCHEME IS PREEMPTED BY STATE LAW .........................................................- 14 -

A. The City Cannot Regulate Businesses Located Outside the City .....................- 15 -

B. The City Cannot Regulate In A Manner That Is Inconsistent With State Law................- 17 -

1. State Law Governing the Towing Industry....................................................- 17 -

2. The Benefits of the Local Regulation ...........................................................- 18 -

3. The Adverse Effect of the City's Permit Scheme Outweighs the Benefits to the
Municipality....................................................................................................- 19 -

III. THE FEES AUTHORIZED BY THE PERMIT SCHEME ARE PREEMPTED BY STATE
LAW ........................................................................................................................- 20 -

IV. THE CITY IS IMPOUNDING TOW TRUCKS FOR VIOLATING THE PERMIT
SCHEME .................................................................................................................- 21 -

V. THE PERMIT SCHEME IS AN UNCONSTITUTIONAL VIOLATION OF THE
COMMERCE CLAUSE ...........................................................................................- 23 -

VI. DECLARATORY AND INJUNCTIVE RELIEF IS REQUIRED ...................................- 25 -

CONCLUSION......................................................................................................................- 27 -

1

## TABLE OF AUTHORITIES

2

3 **Cases**

4 *Ainsworth v. Bryant* (1949) 34 Cal.2d 465..................................................................................... - 21 -

5 *Automobile Club of New York, Inc. v. Dykstra* (2nd Cir. 2008) 520 F.3d 210...................- 9 -, - 10 -, - 14 -

6 *Automobile Club of New York, Inc. v. Dykstra* (S.D.N.Y. 2006) 423 F.Supp.2d 279................. - 23 -, - 24 -

7 *Bell v. City of Mountain View* (1977) 66 Cal.App.3d 332 ....................................................... - 19 -

8 *Cardellini v. Casey* (1986) 181 Cal. App. 3d 389.............................................................. - 25 -

9 *Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504............................................................. - 8 -

10 *City of Columbus v. Ours Garage & Wrecker Serv., Inc.* (2002) 536 U.S. 424......... - 8 -, - 9 -, - 11 -, - 14 -

11 *City of Lafayette v. County of Contra Costa* (1979) 91 Cal.App.3d 749 .............................. - 15 -

12 *City of Poway v. City of San Diego*, 229 Cal. App. 3d 847.................................................... - 14 -

13 *CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132 Cal.App.4th 1034............................ - 8 -

14 *Florida v. Jimeno* (1991) 500 U.S. 248..................................................................................... - 22 -

15 *Horwith v. Fresno* (1946) 74 C.A.2d 443 .......................................................................... - 19 -

16 *Independent Towers of Washington v. Washington* (9th Cir.2003) 350 F.3d 925 ................................... - 8 -

17 *Ingels v. Riley* (1936) 5 Cal.2d 154.................................................................................... - 21 -

18 *Ingersoll v. Palmer* (1987) 43 Cal.3d 1321.............................................................................. - 22 -

19 *McKay Jewelers, Inc. v. Bowron* (1942) 19 Cal.2d 595........................................................... - 26 -

20 *Northway Towing, Inc. v. City of Pasadena, Texas* (S.D. Tex. 2000) 94 F.Supp.2d 801 ............ - 11 -, - 12 -

21 *People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476.......................................... - 17 -

22 *People v. PKS, Inc.* (1994) 26 Cal.App.4th 400................................................................... - 15 -

23 *Pike v. Bruce Church, Inc.* (1970) 397 U.S. 137.................................................................... - 24 -

24 *Rumford v. City of Berkeley*, 31 Cal. 3d 545............................................................. - 14 -, - 15 -

25 *San Francisco Newspaper Printing Co., Inc. v. Superior Court (Miller)* (1985) 170 Cal.App.3d 438 .- 26 -

26 *Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618 ............................................. - 26 -

27 *Startrack, Inc. v. County of Los Angeles* (1976) 65 Cal.App.3d 451 ..................................................... - 26 -

28 *Stucky v. City of San Antonio* (5th Cir.2001) 260 F.3d 424 .................................................................... - 11 -

*Tehachapi-Cummings County Water Dist., v. Armstrong* (1975) 49 Cal. App. 3d 992 .......................... - 25 -

*Walker v. Los Angeles County* (1961) 55 Cal. 2d 626 .......................................................................... - 25 -

*Weekès v. City of Oakland* (1978) 21 Cal.3d 386 .......................................................................... - 20 -, - 21 -

**Statutes**

49 U.S.C. § 14501 ................................................................................................................................... - 9 -

Civil Code sec. 3368 ............................................................................................................................. - 26 -

Rev. & Tax. Code §7232 ....................................................................................................................... - 9 -

Rev. & Tax. Code sec. 7232 .......................................................................................................... - 17 -, - 19 -

Revenue and Taxation Code section 7233 ........................................................................................... - 20 -

Veh. Code sec 24603 ........................................................................................................................... - 17 -

Veh. Code sec. 12110 ........................................................................................................................... - 18 -

Veh. Code sec. 10650 ........................................................................................................................... - 18 -

Veh. Code sec. 22406.1 ........................................................................................................................ - 18 -

Veh. Code sec. 22513 .................................................................................................................... - 14 -, - 18 -

Veh. Code sec. 22651 ........................................................................................................................... - 14 -

Veh. Code sec. 22651.1 ........................................................................................................................ - 18 -

Veh. Code sec. 22658 ........................................................................................................................... - 15 -

Veh. Code sec. 24605 .................................................................................................................... - 14 -, - 17 -

Veh. Code sec. 25110 ........................................................................................................................... - 17 -

Veh. Code sec. 26454 ........................................................................................................................... - 17 -

Veh. Code sec. 26458 ........................................................................................................................... - 17 -

Veh. Code sec. 27700 .................................................................................................................... - 14 -, - 17 -

Veh. Code sec. 27907 ........................................................................................................................... - 17 -

Veh. Code sec. 29004 ........................................................................................................................... - 17 -

Veh. Code sec. 34507.5 .................................................................................................................. - 14 -, - 17 -

Veh. Code sec. 5201 ............................................................................................................................. - 17 -

Veh. Code sec.25253 ............................................................................................................................ - 17 -

Veh. Code secs. 22652 ......................................................................................................................... - 18 -

iii

1  Veh. Code secs. 24600 ...................................................................................................................- 17 -

2  Vehicle Code section 21.....................................................................................................................- 14 -

3  Vehicle Code section 21100................................................................................................................- 15 -

4  Vehicle Code section 615.................................................................................................- 4 -, - 14 -, - 17 -

5  **Treatises**

6  8 Witkin, Summary 10th (2005) Const Law, § 1000 ..........................................................................- 19 -

7  **Constitutional Provisions**

8  Article I, section 8, clause 3 of the United States Constitution.............................................................- 23 -

9  Cal. Const. Art. 1 § 13.........................................................................................................................- 22 -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
## INTRODUCTION

2        The City and County of San Francisco (hereafter "the City") has enacted an ordinance

3   that prohibits any person from driving a tow truck within the City without first obtaining a permit

4   from the Chief of Police. Another ordinance prohibits any towing firm from doing business

5   within the City without first obtaining a permit for the firm. This permit scheme is preempted by

6   state and federal law, and for that reason should be declared invalid. Moreover, the City should

7   be enjoined from enforcing the invalid ordinances.

8

9
## STATEMENT OF FACTS

10   A. Introduction

11        Plaintiff CALIFORNIA TOW TRUCK ASSOCIATION ("CTTA") is, and at all times herein

12   mentioned was, a nonprofit corporation organized and existing under the laws of the state of

13   California, with its principal place of business in the County of Riverside, State of California.

14   (Hunter Dec., ¶2.) CTTA represents more than 1,000 towing companies doing business

15   throughout the state of California. (Hunter Dec., ¶3.) Many member companies do business in

16   and around the City and County of San Francisco. (Hunter Dec., ¶6.)

17        Defendant CITY AND COUNTY OF SAN FRANCISCO ("the City") is a charter city which

18   is empowered to enact municipal ordinances through its duly elected Board of Supervisors. (Cal.

19   Const. Art. XI, §§ 2, 3, 5.) Pursuant to this authority, the City has enacted two articles within the

20   City and County of San Francisco Police Code concerning the towing industry. (Whalen Dec. ¶¶

21   2-3.)

22        In summary, these two articles set forth a permit scheme which requires any person any

23   person driving or operating a tow car within the city and any person who engages or conducts

24   business as a tow car firm within the City to obtain a permit. Failure to do so is a misdemeanor.

25   Acquiring a permit requires a rigorous background check and the payment of substantial fees to

26   the City.

27        ///

28

-1-

B. The Towing Industry

The California Highway Patrol regularly inspects the tow trucks of towing companies throughout the state. (Little Dec. ¶3; Berry Dec. ¶3; Shah Dec. ¶3.) Similarly, their drivers undergo criminal background checks. (*Ibid.*) In addition, all towing companies are required to have a valid motor carrier permit issued by the Department of Motor Vehicles. (Rev. & Tax Code sec. 7232; Little Dec. ¶12; Berry Dec. ¶10; Shah Dec. ¶15.) The motor carrier permit cannot be obtained without proof of liability insurance. Furthermore, all tow trucks are required to have "on-hook" insurance coverage with a minimum of $50,000 for small tow trucks and $250,000 for larger tow trucks. Tractor trailers are required to have cargo insurance. (Little Dec. ¶12.) In addition, companies with employees are required to have proof of workers compensation insurance in order to obtain a motor carrier permit. (Little Dec. ¶12; Berry Dec. ¶10; Shah Dec. ¶15.)

Tow truck drivers are required to stop at truck scales on highways, and are all subject to a random enforcement program implemented by the California Highway Patrol during which they must provide a valid driver's license, registration, and insurance, as well as a safety inspection of their vehicle. (Little Dec. ¶13; Berry Dec. ¶11; Shah Dec. ¶16; Hunter Dec. ¶9.)

CTTA members who perform heavy duty towing operating 3 axle trucks in excess of 10,000 GVWR (gross vehicle weight rating) or operating vehicle combinations in excess of 40 feet, are subject to Biennial Inspection Terminal ("BIT)" by the California Highway Patrol. Heavy duty drivers are also required to enter into a pull notice program with the Department of Motor Vehicles which monitors any activity on their driver license and notifies me of any ticket, or other violation. (Little Dec. ¶13.) They are also required to participate in a drug and alcohol testing program. (Little Dec. ¶13; Hunter Dec. ¶9.) Interstate vehicles are required to have a United States Department of Transportation Number in addition to a CA number accompanying the motor carrier permit. (Little Dec. ¶13.)

CTTA makes safety training available to all of its members and their employees. The training programs span several days and include such topics as:

-2-

Safe Driving Practices
Safe Towing Capacity
Hazardous Materials
Appearance & Conduct
Incident Management
Safety during road service
Impounded and stored vehicle protocol
General towing precautions
Release Procedures
Customer Service

Our training classes provide both classroom and hands on instruction, and all courses conclude with a rigorous testing process that training participants must pass before getting certification. (Hunter Dec. ¶7.)

The nature of the towing business is such that companies based in one city will commonly do business in other cities and counties throughout the state. (See, e.g., Berry Dec. ¶¶1, 2, 4; Shah Dec. ¶¶1, 2, 4.) Most of CTTA's members conduct towing operations in multiple counties and in and around dozens of cities throughout California. (Hunter Dec. ¶4.) It is not uncommon for a tow operator to pick up a vehicle in one city, tow it through one or more cities or counties, and deliver to a residence, storage yard, salvage lot, or repair facility in a different city or county. (Hunter Dec. ¶5.)

Some of the larger companies perform interstate towing and hauling services, such that their drivers regularly travel through various states, as well through various cities and counties within California in the course of their regular duties. (Little Dec. ¶2.) These companies perform towing services that involve towing or hauling vehicles from within the State of California to other states. They also perform towing services that involve towing or hauling vehicles from other states into California. They also tow or haul vehicles out of San Francisco to locations in other states, and tow or haul vehicles from other states into San Francisco. (Little Dec. ¶4.)

Many companies tow cars from one location outside of San Francisco to another location outside of San Francisco, but are required to drive through San Francisco to reach their destination. They also tow vehicles from locations outside of San Francisco to destinations within the City and County of San Francisco, which requires them to drive into San Francisco.

-3-

1   They also tow vehicles from locations within San Francisco to destinations outside of San

2   Francisco, which also requires them to drive into San Francisco. They also occasionally need to

3   drive through San Francisco in their tow truck or tractor trailer to get to a destination outside of

4   San Francisco to perform tow services. (Little Dec. ¶5; Berry Dec. ¶4; Shah Dec. ¶4.)

5           C. The Permit Scheme

6       Article 30 governs "tow cars" which are defined in the same manner as in the Vehicle Code.

7   (SF Police Code section 3001.) The Vehicle Code defines "tow truck" as follows:

8

9           a motor vehicle which has been altered or designed and equipped for, and
            primarily used in the business of, transporting vehicles by means of a crane, hoist,
10          tow bar, tow line, or dolly or is otherwise primarily used to render assistance to
            other vehicles. A "roll-back carrier" designed to carry up to two vehicles is also a
11          tow truck. A trailer for hire that is being used to transport a vehicle is a tow truck.
            "Tow truck" does not include an automobile dismantlers' tow vehicle or a
12          repossessor's tow vehicle.

13  (Vehicle Code section 615.) In 1988, this section (and others throughout the Vehicle Code) was

14  amended to change "tow car" to "tow truck."

15      San Francisco Police Code section 3000 provides:

16

17          No person shall drive or operate a tow car within the City and County of San
            Francisco without first obtaining a permit from the Chief of Police hereinafter
18          provided.

19  In order to comply with the ordinance, all tow car drivers seeking to "drive or operate within the

20  City" must obtain a permit and are required to have it in their possession at all times and to

21  exhibit it to any peace officer on demand. (SF Police Code sec. 3007.)

22      Obtaining a permit requires payment of various fees and submission of a variety of

23  documents. (SF Police Code secs. 3002, 3003.) The Chief of Police shall issue a permit to an

24  applicant unless the applicant has been convicted of certain theft or vehicle crimes within the

25  past four years, or has "acted in violation of " those crimes, or has intentionally falsified any

26  statement in the application. (SF Police Code sec. 3004.) The permits are valid for a period of

27  one year, and may then be renewed upon payment of additional fees. (SF Police Code sec.

28  3008.)

1    Any violation of the statutory scheme for tow car drivers is a misdemeanor punishable by a

2    fine of up to $500, or incarceration for up to six months in jail, or both.  (SF Police Code sec.

3    3012.)

4    Article 30.1 of the City and County of San Francisco Police Code governs "tow car firms."

5    A tow car firm is defined as

7    Any person, firm, partnership, association, corporation, or any other group or
     combination acting as a unit, excepting the United States, the State of California,

8    and any political subdivision of either thereof, engaged in the business of
     transporting, removing, or storage of motor vehicles, including the owner/operator

9    of any tow car as herein defined.

10   (SF Police Code sec. 3051.)  That same section defines a tow car in terms virtually identical to

11   the definition of "tow truck" in Vehicle Code section 615.

12   San Francisco Police Code section 3050 provides, in pertinent part:

14   No person shall engage in or conduct business as a tow car firm within the City
     and County of San Francisco without first obtaining a permit from the Chief of

15   Police as hereinafter provided.

16   Obtaining a tow car firm permit requires payment of various fees and submission of a variety of

17   documents.  (SF Police Code secs. 3052, 3053, 3058.)  Pursuant to San Francisco Police Code

18   section 3054, the Chief of Police shall issue a tow car firm permit to an applicant unless he finds:

19   (1) Applicant does not possess or cannot obtain the minimum amount of bodily
     injury and/or property damage insurance as required by the Chief of Police rules;

20   or

22   (2) The applicant does not possess the requisite tow car equipment or facilities
     reasonably necessary to operate a tow car business in such a manner as to

23   adequately protect vehicles of the public that are towed and stored from damage
     or theft; or

24

25   (3) The applicant has been convicted of theft, petty theft, theft of a vehicle,
     breaking or removing vehicle parts, malicious mischief to vehicle, check fraud,

26   credit card fraud, driving under the influence of alcohol or drugs, vehicular
     manslaughter, reckless driving bodily injury, any sex offense which would cause

27   the applicant to be registered as a sex offender, any unlawful carrying, use or
     possession of a firearm, any assault or battery (misdemeanor or felony),

28

-5-

1    kidnapping, arson, extortion, murder, possession of alcoholic beverage, opened
   alcohol container, marijuana, or narcotic drug while driving, bailee tampering; or

2

3    (4) The applicant has knowingly falsified any statement contained in his
   application, or has knowingly omitted information in his application which could

4    result in a denial of the permit; or

5    (5) The applicant does not possess or cannot obtain an FDIC-authorized bank
   credit card machine.

6

7      The tow car firm permits must be displayed in a prominent place within the business. (SF

8 Police Code sec. 3055.) In addition, every tow car firm must also display a brochure

9 summarizing California law, available in three languages, and must maintain at least 50 copies of

10 the brochure on the premises at all times. (SF Police Code sec. 3055.2, subd. (c).)

11      The ordinance authorizes any peace officer to inspect the vehicles of towing firms. (SF

12 Police Code sec. 3059.) However, permit holders have never had their vehicles inspected by the

13 City. (Shah Dec. ¶8.)

14      Tow car firm permits may be suspended or revoked by the Chief of Police for a variety of

15 reasons, including charging "unauthorized fees," or employing any person as a tow car operator

16 who has not been issued a valid permit by the San Francisco Police Department. (SF Police

17 Code sec. 3056.) The tow car firm permits are valid for a period of one year, and may then be

18 renewed upon payment of additional fees. (SF Police Code sec. 3062.)

19      Any violation of the statutory scheme for tow car firms is a misdemeanor punishable by a

20 fine of up to $500, or incarceration for up to six months in jail, or both. (SF Police Code sec.

21 3064.)

22         D. Tow Trucks Impounded by the City

23      On or about March 30, 2010, a tow car was impounded by the San Francisco Police

24 Department for failing to have a permit. On or about April 4, 2010, another tow car which was

25 towing a vehicle was also impounded by the San Francisco Police Department for failing to have

26 a permit. (Whalen Dec. Exh. C ¶6; see also Shah Dec. ¶13; Hunter Dec. ¶10; Berry Dec. ¶6;

27 Little Dec. ¶7.)

28

-6-

1    The ability of CTTA members to conduct their business is adversely affected by the San

2  Francisco ordinance, because it subjects them to great uncertainty as to whether they are able to

3  conduct business in, around, and through the City and County of San Francisco. (Hunter Dec.

4  ¶11.) CTTA Members have been harassed and subject to citations, fines, and in some cases the

5  impound of their tow truck by the City and County of San Francisco for failing to obtain a

6  permit. (Hunter Dec. ¶10.)

7         E. The Impacts of the Scheme

8    Many towing companies located outside of the City regularly are required to drive into or

9  through the City as part of the towing services they perform. (Shah Dec. ¶4; Berry Dec. ¶4;

10  Hunter Dec. ¶6; Little Dec. ¶¶4-5.) Some of these companies have pursued the permit

11  application process, at a cost of thousands of dollars. (Shah Dec. ¶¶5-7.) Because the towing

12  companies are required to obtain permits for each driver that conducts business in the City, the

13  permit scheme has a direct impact on the prices the towing companies. (Shah Dec. ¶10.) The

14  scheme also impacts the routes and service of these companies, because those drivers who do not

15  have a permit are forced to take alternate routes around the City. (Shah Dec. ¶11.) This directly

16  impacts the services these companies can provide to their customers. (Shah Dec. ¶12.) The cost

17  of obtaining the additional permits ahs directly limited the ability of these companies to grow

18  and expand their business. (Shah Dec. ¶14.)

19    Other companies have refused to obtain the required permits. (Berry Dec. ¶7; Little Dec. ¶8.)

20  This ordinance has directly impacted the routes that the drivers in these companies take when

21  performing towing services in and around the greater Bay Area. (Berry Dec. ¶8; Little Dec. ¶9.)

22  It also impacts the services they can provide to their customers, by increasing response times.

23  (Berry Dec. ¶8; Little Dec. ¶9.)

24    ///

25    ///

26    ///

27    ///

28

-7-

1

**ARGUMENT**

2 ## I. THE CITY'S PERMIT SCHEME IS PREEMPTED BY FEDERAL LAW

3 ### A. Principles of Preemption

4     Article VI of the United States Constitution, known as the Supremacy Clause, provides that

5 "the laws of the United States . . . shall be the supreme Law of the Land; ... anything in the

6 Constitution or Laws of any state to the contrary notwithstanding." Under the Supremacy

7 Clause, state law that conflicts with federal law is "without effect." (*Cipollone v. Liggett Group,*

8 *Inc.* (1992) 505 U.S. 504, 516, 517.)

9     The United States Supreme Court has recognized that the Federal Aviation Administration

10 Authorization Act of 1994 (the FAAAA) "generally preempts state and local regulation 'related

11 to a price, route, or service of any motor carrier ... with respect to the transportation of

12 property.'" (*City of Columbus v. Ours Garage & Wrecker Serv., Inc.* (2002) 536 U.S. 424, 429

13 ("*City of Columbus*").) Specifically, the FAAAA provides:

14

15     "(1) General Rule. Except as provided in paragraphs (2) and (3), a State [or]
political subdivision of a State ... may not enact or enforce a law, regulation, or
16     other provision having the force and effect of law related to a price, route, or
service of any motor carrier ... with respect to the transportation of property."
17

(49 U.S.C. § 14501(c)(1).) The phrase "related to" in this general preemption provision is
18
"interpreted quite broadly." (*Independent Towers of Washington v. Washington* (9th Cir.2003)
19
350 F.3d 925, 930.) Given this mandate of a broad interpretation, California courts recognize
20
that a state or local regulation is "related to" the price, route, or service of a motor carrier if the
21
regulation "has more than an indirect, remote, or tenuous effect on the motor carrier's prices,
22
routes, or services." (*CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132
23
Cal.App.4th 1034, 1044.)
24
    The FAAAA contains an exception to the foregoing preemption provision. Specifically, the
25
preemption provision
26

27     shall not restrict the safety regulatory authority of a State with respect to motor
vehicles, the authority of a State to impose highway route controls or limitations
28     based on the size or weight of the motor vehicle or the hazardous nature of the

-8-

cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization

(49 U.S.C. § 14501(c)(2).) This "safety" exception permits states to enact laws that are truly aimed at ensuring the safety of motor vehicles. However, the exception is to be construed narrowly, not broadly. The United States Supreme Court has declared that "Local regulation of prices, routes, or services of tow trucks that is not genuinely responsive to safety concerns garners no exemption from § 14501(c)(1)'s preemption rule." (*City of Columbus, supra*, 536 U.S. 424 at p. 442.) Accordingly, the only state regulation of motor carriers that is permissible is regulation that is "genuinely responsive to safety concerns." All tow truck operators are motor carriers (see Rev. & Tax. Code §7232, subd. (d)) and therefore any regulations on the towing industry must be limited to the safety exception or they will be deemed invalid under the preemption doctrine.

### B. The City's Permit Scheme Is Preempted

Because the City's permit scheme is, on its face, a regulatory scheme that applies to tow truck operators and businesses, it is presumptively preempted by the FAAAA unless it comes within an exception. The only possible exception that is remotely relevant to the instant case is the safety exception discussed above. As will be demonstrated, that exception cannot save the City's permit scheme.

In determining whether a particular law is "genuinely responsive to safety concerns" courts employ a two-step analysis.

First, a court must consider any specific expressions of legislative intent in the statute itself as well as the legislative history. Then, it must assess those "purported safety justifications ... in light of the existing record evidence.

(*Automobile Club of New York, Inc. v. Dykstra* (2nd Cir. 2008) 520 F.3d 210, 215 ("*Dykstra*").)

Using that analysis, courts have previously found schemes very much like the one presently at issue to be preempted. In *Dykstra*, the Auto Club challenged a New York City tow truck licensing scheme. Like the City's scheme presently at issue, the New York scheme made it unlawful to "engage in towing without having first obtained a license." (*Id.* at p. 212.) In

-9-

1   addition, the scheme required a towing business to pay fees of $600 per truck and $20 per driver,

2   as well as an additional fee for a fingerprint report and criminal record check. (*Ibid.*) As

3   explained by the court

4       Thus, as a whole, the Scheme requires that all tow trucks within the City limits
        must be licensed by the City or risk seizure. This is true regardless of whether the
5       truck has a vehicle in tow and regardless of whether the truck is actively soliciting
        business in the City or simply passing through, such as towing a car from New
6       Jersey to Long Island.

7   (*Id.* at p. 212.) The Court undertook a review of the legislative history and found that a principal

8   reason for enacting the New York scheme was to prevent "chasing."[1] The court recognized the

9   valid public safety concern with chasing. However, the court noted that:

10

11      the legislative history does nothing to explain whether the City Council intended
        to subject all tow trucks passing through the City to its Scheme or why such broad
12      regulation was necessary. . . . the City chose to impose its Scheme on all tow
        trucks that happened to be within its limits, regardless of whether they were
13      chasing. The legislative history is silent on how those trucks not engaged in
        chasing, or those merely driving through New York City threaten public safety
14      and how the expanded definition of "towing" is genuinely responsive to those
15      concerns.

16  (*Id.* at p. 216.)

17  The court then noted that there was no evidence that the New York scheme was in fact

18  "genuinely responsive" to safety concerns because "the City has never assessed the effectiveness

19  of the Scheme in fighting chasing." (*Ibid.*) Thus, it is not enough for a regulatory scheme to be

20  motivated by a desire for safety; it must have some actual effect on safety. However, the court

21  did not end its analysis there. Even if the New York scheme was effective in addressing the

22  safety concerns with chasing, the regulation was overbroad because it applied to all tow trucks

23  operating in the City, even that were just passing through the city en route to a towing job

24  outside the city. (*Id.* at pp. 216-217.) The Court observed that

25

26

27  [1] "Chasing" was defined as the practice of towing companies monitoring police radio transmissions in order to learn
    of accidents and then to race to the scene to secure towing and repair work, which imperils both pedestrian and
28  vehicular safety and too often results in tragic injury to pedestrians and other motorists. (Dykstra, supra, 520 F.3d at
    p. 215.)

1   [a]lthough enforcement of the Scheme under these circumstances might serve to
    protect the City resident from high prices, that is not a safety concern. At that
2   point, it becomes precisely the general industry regulation that Congress intended
    to preempt in enacting 49 U.S.C. § 14501(c).
3
    (*Id.* at p. 217.) Because the New York scheme was not genuinely responsive to safety concerns,
4
    the court found that it was preempted by the FAAAA.
5
        In a similar case, a federal district court found that a city ordinance requiring a permit before
6
    operating any towing vehicle on the streets within the city was preempted. (*Northway Towing,*
7
    *Inc. v. City of Pasadena, Texas* (S.D. Tex. 2000) 94 F.Supp.2d 801, 803 ("*Northway*").)[2]  The
8
    court rejected the city's argument that the issuance of permits to tow truck drivers deterred
9
    vehicle theft. More importantly, the court noted that even if it did somehow deter vehicle theft,
10
    the permit scheme "does not ensure that the towing and storage of motor vehicles will be
11
    performed safely." (*Ibid.*) Thus, the safety exception is limited to ordinances that actually
12
    address the safe performance of towing services, and does not include general anti-crime
13
    measures.
14
        Using the analysis of *Dykstra* and *Northway* it is clear that the San Francisco scheme does
15
    not survive preemption. A review of the scheme reveals that it is not concerned with safety at
16
    all. Requiring tow truck drivers to have a City permit (SF Police Code § 3000) does nothing to
17
    increase safety. Requiring permit applicants to list their height, weight, and other identifying
18
    information (SF Police Code § 3002) has no relationship to safety whatsoever. They payment of
19
    various fees to the city (SF Police Code § 3003) simply operates as a revenue generating
20
    mechanism, but does not relate to safety.
21
        Denying permits to applicants who have suffered various criminal convictions within the last
22
    four years (SF Police Code § 3004) is not related to safety either. Drivers with clean criminal
23
    records can still be unsafe tow truck operators. The lack of a criminal record says nothing about
24
    the ability of a driver to operate a tow truck safely. Like the argument about deterring vehicle
25
    theft that was rejected in *Northway*, ensuring that tow truck drivers have no recent convictions
26
27  [2] The decision in *Northway* was abrogated on other grounds by *Stucky v. City of San Antonio* (5th Cir.2001) 260
28  F.3d 424, which was itself later abrogated by *City of Columbus v. Ours Garage & Wrecker Serv., Inc.* (2002) 536
    U.S. 424.

1  for certain enumerated offenses has no impact on safety. (See *Northway*, *supra*, 94 F.Supp.2d at
2  p. 803.)

3      Similarly, requiring tow truck drivers to have the permit in their possession at all times (SF
4  Police Code § 3007) does nothing to enhance safety. Likewise, punishing drivers who fail to
5  comply with the permit scheme with misdemeanor convictions (SF Police Code § 3012) does not
6  make the towing industry any safer.

7      The permit scheme as applied to towing firms also is not genuinely responsive to safety
8  concerns. Requiring firms to have permits (SF Police Code § 3050), to display them in their
9  business (SF Police Code § 3055) and to display brochures in multiple languages (SF Police
10  Code § 3055.2, subd. (c)) does not have even the most remote relationship to safety. Denying
11  permits to towing firms based on the business owner's criminal history is dubious at best because
12  the list of crimes that justify denial of a permit (SF Police Code § 3054) or revocation of a permit
13  (SF Police Code § 3056) are seemingly random and have no relationship to safety. A prior
14  conviction for check fraud, for example, sheds no light on whether the person will be a safe
15  towing firm operator. The only ordinance which has a marginal relationship to safety is SF
16  Police Code § 3059 which provides that tow car firm vehicles may be inspected for code and
17  safety violations by any peace officer. However, tow trucks are already subject to rigorous
18  safety inspections independent of the permit scheme. (Little Dec ¶3; Berry Dec. ¶3; Shah Dec.
19  ¶3.) Moreover, while the ordinance provides that tow trucks "may" be inspected, the fact the
20  City does not do any inspections. (Shah Dec. ¶8.)

21      On its face, the permit scheme has no relationship to safety whatsoever. Nor is there any
22  expression of legislative intent regarding the purpose of the scheme. However, the scheme does
23  contain some "findings." Specifically, San Francisco Police Code section 3055.2, subdivision
24  (a) provides:

25          (a) Findings. The Board of Supervisors finds:
26              (i) that there are frequent incidents of illegal towing from private property
           in San Francisco; and
27              (ii) that there is a significant risk to the safety of residents and visitors
           when illegal towing from private property occurs at night; and
28

- 12 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(iii) that there is a risk to public health and safety when the vehicles of senior citizens and persons with disabilities are illegally towed from private property; and

(iv) that illegal towing from private property affects vulnerable populations when people of limited economic means are required to pay hundreds of dollars to recover their vehicle, or are subjected to deficiency claims by collection agencies if they could not afford to pick up their vehicle even though the vehicle was illegally towed; and

(v) that the rights of vehicle owners when their vehicle is towed from private property, as described in the California Vehicle Code, are extremely difficult for citizens and visitors to find and understand, especially for non-English speakers or those who speak English as a foreign language; and

(vi) that there are no accessible resources for people to research their rights and responsibilities with respect to private property tows; and

(vii) that requiring tow car firms to provide information on the legal rights of vehicle owners at the time they reclaim their vehicle would be an effective way of informing vehicle owners of their rights under California law when their vehicle is towed from private property; and

(viii) that preventing illegal conduct by tow car operators when towing from private property would reduce the economic burden on residents and visitors by eliminating the need to go to small claims court after a vehicle owner has already paid to reclaim the vehicle; and

(ix) that consistent adherence to legal towing practices will substantially increase the quality of life for residents and the experience of visitors to San Francisco.

These findings were enacted in 2009. The only safety concerns referenced in the findings is the identification of risks to public safety when "illegal towing from private property" occurs at night or when "the vehicles of senior citizens and persons with disabilities are illegally towed from private property." (SF Police Code 3055.2, subd. (a)(ii) and (iii).) All of the other findings relate to consumer protection or other non-safety concerns.

But even the findings related to illegal towing from private property do not bring the scheme within the safety exception to preemption. The risk to public safety is no greater whether a vehicle is towed legally or illegally. From the owner's perspective, he is in the same position either way – stranded without his or her vehicle. Indeed, he is no more or less safe than if his car had been stolen. Moreover, nothing in the permit scheme ensures that illegal towing practices will be deterred. If the City's goal is really to deter illegal towing, the appropriate response is to increase the criminal penalties for that practice. But the permit scheme instead places enormous

- 13 -

1  regulatory and economic burdens on legitimate towing firms, and fails utterly to address the

2  "safety" concerns which supposedly arise when certain vehicles are illegally towed from private

3  property.

4  In short, the City's permit scheme does nothing to address safety concerns. Rather, it is

5  "precisely the general industry regulation that Congress intended to preempt in enacting 49

6  U.S.C. § 14501(c)." (*Dykstra, supra,* 520 F.3d 210. at p. 217.) Because the scheme is not

7  "genuinely responsive to safety concerns" the scheme "garners no exemption from §

8  14501(c)(1)'s preemption rule." (*City of Columbus, supra,* 536 U.S. 424 at p. 442.)

9  Accordingly, in light binding Supreme Court precedent, the scheme must be declared as invalid

10  under the Supremacy Clause.

11

12  **II. THE SCHEME IS PREEMPTED BY STATE LAW**

13

14  Vehicle Code section 21 limits the authority of local government to enact ordinances and

15  regulations without express authority to do so. Specifically, that section provides:

16  Except as otherwise expressly provided, the provisions of this code are applicable
17  and uniform throughout the State and in all counties and municipalities therein,
    and no local authority shall enact or enforce any ordinance on the matters covered
18  by this code unless expressly authorized herein.

19  The California Supreme Court has held that "[t]he state's plenary power and its preemption of the

20  entire field of traffic control are stated in Vehicle Code section 21." (*Rumford v. City of*

21  *Berkeley,* 31 Cal. 3d 545, 550.) Courts have repeatedly held that the authority to regulate in an

22  area must be express, not implied. (*Id.* at pp. 551-552; *City of Poway v. City of San Diego,* 229

23  Cal. App. 3d 847, 858.)

24  The Legislature has already enacted numerous statutes regulating the towing industry. (See,

25  e.g., Veh. Code sec. 615 [defining tow trucks]; Veh. Code sec. 24605 [lamp requirements for tow

26  trucks]; Veh. Code sec. 27700 [prescribing equipment for tow trucks]; Veh. Code sec. 34507.5

27  [requiring a carrier identification number] Veh. Code sec. 22513 [allowing tow trucks to stop on

28  freeways]; Veh. Code sec. 22651.1 [requiring towing firms to accept cash or credit cards]; Veh.

1 | Code sec. 22658 [governing tows from private property]; Veh. Code sec. 10650 et seq.

2 | [prescribing rules for vehicle storage].) Accordingly, pursuant to section 21, no city may enact

3 | regulations governing the towing industry unless given express statutory authority to do so.

4 | While a city ordinarily has authority to regulate various matters under its traditional police

5 | power, it is settled that this authority is subject to displacement by the general law. (*People v.*

6 | *PKS, Inc.* (1994) 26 Cal.App.4th 400, 406.) "Upon recodification of the Vehicle Code in 1959,

7 | the Legislature preempted the *entire field* covered by that code." (*City of Lafayette v. County of*

8 | *Contra Costa* (1979) 91 Cal.App.3d 749, 755.)

9 | A. The City Cannot Regulate Businesses Located Outside the City

10 | The Legislature has granted local governments limited authority to regulate the towing

11 | industry. Specifically, Vehicle Code section 21100 provides:

12 |

13 | Local authorities may adopt rules and regulations by ordinance or resolution
regarding the following matters:

14 | . . . .

15 | (g)(1) Licensing and regulating the operation of tow truck service or tow truck
drivers whose principal place of business or employment is within the jurisdiction

16 | of the local authority, excepting the operation and operators of any auto
dismantlers' tow vehicle licensed under Section 11505 or any tow truck operated

17 | by a repossessing agency licensed under Chapter 11 (commencing with Section

18 | 7500) of Division 3 of the Business and Professions Code and its registered
employees.

19 | This statutory provision authorizes municipalities to regulate tow truck firms and drivers "whose

20 | principal place of business or employment is within the jurisdiction of the local authority." This

21 | language is plain and unambiguous. Moreover, the Supreme Court has held that under Vehicle

22 | Code section 21, any "delegation of power to local authorities to enact traffic regulations

23 | applicable within their jurisdictions is strictly construed." (*Rumford v. City of Berkeley, supra*,

24 | 31 Cal. 3d at p. 550.)

25 | The City's permit scheme, however, is not limited to firms and drivers whose principal

26 | place of business or employment is within San Francisco. Quite the contrary, the permit scheme

27 | applies to anyone who drives or operates a tow car within the City regardless of their principal

28 | place of business or employment. (SF Police Code sec. 3000.) It also applies to any person who

- 15 -

1    engages in or conducts business as a tow car firm within the City, regardless of their principal

2    place of business. (SF Police Code sec. 3050.) Thus, the scheme on its face applies to all tow

3    truck drivers and firms that may enter or pass through the city in the course of their business.

4    The scheme thus far exceeds the limited express grant of authority prescribed by the Legislature.

5         The impact of the city's illegal attempt to regulate towing businesses throughout the state

6    is considerable. While all towing companies have a principal place of business, many provide

7    towing services at great distance from their principal place of business. Their operations are not

8    restricted to only the city or county in which their principal place of business is located. Most of

9    CTTA's members conduct towing operations in multiple counties and in and around dozens of

10   cities throughout California. (Hunter Dec. ¶4.) It is not uncommon for a tow operator to pick up

11   a vehicle in one city, tow it through one or more cities or counties, and deliver to a residence,

12   storage yard, salvage lot, or repair facility in a different city or county. (Hunter Dec. ¶5.) Many

13   CTTA members based in and around the greater Bay Area, but outside of the City and County of

14   San Francisco, regularly conduct towing operations that requires them to drive into and through

15   the City and County of San Francisco. This is true even if the vehicle for which they are

16   providing service is not located within the boundaries of the City and County of San Francisco.

17   (Hunter Dec. ¶6.) Towing firms in Oakland, Bay Point, and even Sacramento must travel into,

18   out of, and through San Francisco in the course of their business. (Berry Dec. ¶¶1, 4; Shah Dec.

19   ¶¶1, 4; Little Dec. ¶¶1, 5.)

20        Some towing firms based outside of San Francisco have applied for the necessary permits for

21   their firm and their drivers, at great expense to their business. (Shah Dec. ¶¶5-7.) Other firms

22   have elected not to obtain a permit, which has directly impacted the routes they take and services

23   they perform. (Berry Dec. ¶¶7-9.) Little Dec. ¶¶8-11.) It has also inhibited the growth of their

24   business within the City. (*Ibid.*)

25        The City's permit scheme exceeds the express grant of authority given by the Legislature

26   because its reach and impact extends to all towing firms and drivers who conduct any business

27   whatsoever in San Francisco, even if they are simply driving through San Francisco to perform

28   towing services in another jurisdiction. Accordingly, this Court must deem the scheme

- 16 -

1 | preempted to the extent it purports to regulate tow truck drivers and firms whose principal place
2 | of business or employment is outside San Francisco.

3 | B. The City Cannot Regulate In A Manner That Is Inconsistent With State Law

4 | The city's permit scheme is preempted for another related reason. The Legislature has
5 | already acted in the area of tow truck regulation, and the City's permit scheme places great
6 | burdens on the business with no tangible benefit to the municipality. The California Supreme
7 | Court has explained that State law can preempt local regulation when

8 |
9 | the subject matter has been partially covered by general law, and the subject is of
   | such a nature that the adverse effect of a local ordinance on the transient citizens
   | of the state outweighs the possible benefit to the municipality.
10 |

11 | (*People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 485.) In this case,
12 | there is near total regulation of the field by the State, and the benefits of local regulation do not
13 | outweigh the effect on transient citizens of the state.

14 | *1. State Law Governing the Towing Industry*

15 | The Legislature has already enacted numerous statutes regulating the towing industry. For
16 | example, tow trucks are defined by the Vehicle Code section 615. Virtually every aspect of tow
17 | trucks and their equipment is regulated by state law, including the position of their license plates
18 | (Veh. Code sec. 5201, subd. (a)); the requirement of tail and stop lamps (Veh. Code secs. 24600,
19 | 24603, 24605); the use of flood lamps (Veh. Code sec. 25110), the requirement of warning
20 | lamps (Veh. Code sec.25253); the maintenance of brakes (Veh. Code secs. 26454 subd. (b),
21 | 26458); the requirement that certain equipment be maintained on the tow truck (Veh. Code sec.
22 | 27700); the requirement of signage on the tow truck (Veh. Code sec. 27907); and the
23 | requirement of safety chains (Veh. Code sec. 29004).

24 | In addition to the truck and its equipment, all towing business are required to obtain a motor
25 | carrier permit. (Rev. & Tax. Code sec. 7232.) All trucks must display the motor carrier
26 | identification numbers on the vehicle. (Veh. Code sec. 34507.5.) The manner in which the
27 | towing business conduct their operations is also strictly regulated. For example, statutes specify

28 |

-17-

1  the conditions under which towing can occur in a variety of situations. (Veh. Code secs. 22652-
2  22659.)

3      Moreover, the way towing firms run their operations is heavily regulated. There is a strict
4  prohibition on gifts or commissions (Veh. Code sec. 12110.) They must observe certain speed
5  limitations (Veh. Code sec. 22406.1.) They cannot solicit business except in certain
6  circumstances. (Veh. Code sec. 22513.) They must accept certain forms of payment. (Veh.
7  Code sec. 22651.1.) And they must maintain records of stored vehicles (Veh. Code sec. 10650.)

8      In addition to the foregoing regulations, the vast majority of CTTA members participate in
9  the California Highway Patrol ("CHP") rotation system. (Hunter Dec ¶12.) CHP requires all
10 participants to sign a detailed Tow Service Agreement ("TSA"). (*Ibid.*) Pursuant to the TSA,
11 tow operators must:

- have a minimum of 3 years experience;
- participate in a drug and alcohol testing program;
- maintain minimum staffing levels and hours of operation;
- meet maximum response times;
- have an adequate storage facility;
- meet minimum equipment specifications;
- allow CHP to inspect all trucks at least one per year;
- charge reasonable rates;
- maintain minimum levels of insurance;
- adhere to a code of conduct;

19 (*Ibid.*) Failure to adhere to any of the foregoing requirements can result in expulsion from the
20 CHP rotation system. (*Ibid.*)

21     As should be apparent, the level of state regulation over the towing industry is extensive.
22 Compliance with the wide variety of state laws is extremely difficult, and ensures that the towing
23 industry is professional and operates at a level sufficient to ensure the safety of the motoring
24 public.

25 *2. The Benefits of the Local Regulation*

26     The City's permit scheme does nothing to add to the safety of the public. While the scheme
27 allows for inspections, the City does not perform any inspections pursuant to that provision.
28 (Shah Dec. ¶8.) Even if they did conduct inspections, there is nothing to show that the

- 18 -

1  inspection would create any additional protection beyond the inspection that is already

2  performed by the California Highway Patrol. The only benefit from the City's permit scheme

3  appears to be that it generates substantial revenue for the City.

4  *3. The Adverse Effect of the City's Permit Scheme Outweighs the Benefits to the Municipality*

5  In this case, the City's scheme should be deemed preempted because

6

7  Where the state has provided a comprehensive scheme for examining and
   licensing members of a particular trade or profession, municipalities may not

8  impose additional qualifications before issuing licenses to exercise the trade or
   profession within the city

9  (8 Witkin, Summary 10th (2005) Const Law, § 1000, p. 578.) The state has established a

10  licensing scheme in that all tow operators are required to have a valid motor carrier permit.

11  (Rev. & Tax. Code sec. 7232.) "The state license implies permission to the licensee to conduct

12  his business at any place within the state." (*Horwith v. Fresno* (1946) 74 C.A.2d 443, 449.)

13  However, the City's permit scheme impedes the ability of properly licensed tow operators from

14  operating in and around the City of San Francisco without first obtaining an additional permit at

15  great expense.

16  In *Bell v. City of Mountain View* (1977) 66 Cal.App.3d 332, 339, the court evaluated whether

17  an ordinance was preempted under the "adverse effect" test. It found that it was not, because

18

19  The city's licensing ordinance avoids any interference with the free flow of inter-
   city commerce by exempting ambulances operating from a point outside the city

20  to a destination within the city or proceeding through the city while en route to a
   destination outside the city.

21

22  However, in this case, the City's permit scheme directly interferes with the free flow of intercity

23  commerce, because towing companies cannot conduct business effectively in and around the Bay

24  Area without risking citation or impound of their vehicles. Accordingly, the City's permit

25  scheme should be deemed preempted under state law.

26  ///

27  ///

28

1

## III. THE FEES AUTHORIZED BY THE PERMIT SCHEME ARE PREEMPTED BY STATE LAW

Under the permit scheme, various "fees" are charged as part of the application and renewal process. (SF Police Code secs. 3003, 3053.) Because permits are required not only for a towing firm, but all of its drivers, a typical business can incur thousands of dollars in expenses in obtaining the required permits. (Shah Dec. ¶¶5-7.)

Revenue and Taxation Code section 7233, enacted in 1996, prohibits the assessment of these fees on motor carriers of property (including tow trucks). That section provides:

> No city, county, or city and county, shall assess, levy, or collect an excise or
> license tax of any kind, character, or description whatever upon the transportation
> business conducted on or after the effective date of this chapter, by any for-hire
> motor carrier of property.

Municipalities are thus prohibited from assessing or collecting "a license tax of any kind, character or description." However, that is precisely what the city's permit scheme does – it collects a tax under the guise of "fee" for the purpose of obtaining a license or "permit."

Despite using the word "fee" in the permit scheme ordinances, there can be little doubt that the collection and assessment of the fee is prohibited under Revenue and Taxation Code section 7233. The language of that section is broad, and refers to "an excise or license tax of any kind, character, or description whatever." These words demonstrate a legislative intent to prohibit the precise sort of economic burden imposed by the City's permit scheme. It is frivolous to argue that a municipality could avoid the clear and broad prohibition of section 7233 by the simple expedient of labeling a tax a "fee."

Such an argument would be untenable in any event in light of binding Supreme Court precedent regarding business license taxes. The high Court has made clear that the legislative designation of a particular tax (i.e. calling it a "fee" or "surcharge" is not determinative as to its nature. (*Weekes v. City of Oakland* (1978) 21 Cal.3d 386, 392.) Rather "[t]he character of a tax is ascertained from its incidents, not its label. (*Ibid*, citing *Ainsworth v. Bryant* (1949) 34 Cal.2d

-20-

1 465, 473.) In any event, it is worth noting that revenue and Taxation Code section 7233 appears
2 in Chapter 1 of Part 1.55 of Division 2 of the Revenue and Taxation Code, and the Chapter is
3 entitled "Motor Carriers of Property Permit Fee." Thus, this section of the code appears to use
4 the terms "fee" and "tax" interchangeably.

5 The Court also explained the common features of a business or license tax. "A business or
6 occupation tax is usually defined as a revenue-raising levy upon the privilege of doing business
7 within the taxing jurisdiction." (*Id.* at p. 394.) Moreover, payment of the tax is a condition
8 precedent to continued exercise of the privilege made subject to tax. (*Ibid,* citing *Ingels v. Riley*
9 (1936) 5 Cal.2d 154, 159.)

10 The fees charged pursuant to the City's permit scheme are precisely the kind of business or
11 license tax described by the California Supreme Court in *Weekes.* Obtaining a permit (and the
12 payment of the associated fees) is a condition precedent to engaging in the towing business
13 within the jurisdiction of San Francisco. Accordingly, the fees are a tax and are prohibited by
14 Revenue and Taxation Code section 7233. This Court must therefore declare that the assessment
15 and collection of fees contemplated by the permit scheme is preempted by state law.

16

17 **IV. THE CITY IS IMPOUNDING TOW TRUCKS FOR VIOLATING THE PERMIT**
18 **SCHEME**

19

20 On March 30, 2010, a tow vehicle belonging to PP&M Towing and Recovery, Inc. was
21 impounded by the City because it lacked a current permit. (Whalen Dec. ¶4 and Exh. C, ¶ 6.)
22 On April 4, 2010, another PP&M Truck was stopped while towing a vehicle within the city and
23 it was impounded as well. (*Ibid.*) Other PP&M trucks have been stopped and threatened with
24 citation and/or impound. (*Ibid.*) CTTA members have been harassed and subject to citations,
25 fines, and in some cases the impound of their tow truck by the City and County of San Francisco
26 for failing to obtain a permit. (Hunter Dec. ¶10.) Many towers are aware of the recent policy of
27 impounding tow trucks that lack a permit. (Little Dec. ¶7; Berry Dec. ¶6; Little Dec. ¶13.) The
28 threat of impoundment of a tow truck is significant because impoundment deprives the tow truck

1  driver of his livelihood and deprives the towing firm of equipment essential to maintain its
2  operations.

3      The permit scheme does not authorize the impound of tow trucks. Moreover, the Fourth
4  Amendment to the United States Constitution protects against "unreasonable searches and
5  seizures." And the California Constitution contains a similar protection against unreasonable
6  seizures. (Cal. Const. Art. 1 § 13.)

7      The permit scheme prescribes the punishment for a violation: a misdemeanor violation with
8  a fine of up to $500 (for drivers) or up to $1000 (for towing firms) and/or imprisonment in
9  county jail for up to six months. (SF Police Code secs. 3012, 3064.) But the scheme does not
10  authorize the impound of any vehicles. All that appears is that vehicles operating in violation of
11  the permit scheme are *sometimes* impounded. The permit scheme sets forth no criteria for
12  exercising discretion as to whether to impound a tow truck or not.

13      If the permit scheme authorized impounds, an interesting debate could be had about the
14  constitutionality of such a provision. However, in the absence of any authorization whatsoever,
15  and the lack of any criteria specifying the conditions under which vehicles will be subject to
16  impound, any impound of a tow truck for violating the permit scheme must be declared
17  unreasonable.

18      The United States Supreme Court has declared that "[t]he touchstone of the Fourth
19  Amendment is reasonableness." (*Florida v. Jimeno* (1991) 500 U.S. 248, 250.) The analysis of
20  reasonableness is identical under California's parallel provision in Article 1, section 13.
21  (*Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1329.) It is unreasonable to subject tow truck
22  drivers and towing firms to the possibility that their vehicles will be impounded on the whim of
23  the peace officer. No public purpose is served by impounding the vehicle, because the necessary
24  deterrence from violating the permit scheme is achieved by the threat of a fine and
25  imprisonment. Moreover, it must be noted that because the impound occurs prior to any
26  adjudication of the alleged permit violation, the driver and tow firm are denied the protection of
27  a neutral and detached magistrate evaluating the propriety of the impound.

28      At least one court has previously found that such impounds are unconstitutional.

-22-

1

2    seizure by a City agency of any outsider tow truck in New York City is prohibited
     where the only ground the agency reasonably has and can assert for the seizure is
3    that the tow truck is not licensed by the City of New York.

4    (*Automobile Club of New York, Inc. v. Dykstra* (S.D.N.Y. 2006) 423 F.Supp.2d 279, 287.) In

5    that case, however, the permit scheme expressly provided for impounds, so at least drivers and

6    firms were on notice of the possibility of impounds and the conduct for which impound loomed

7    as a consequence. (Id. at p. 286.)

8        In this case, however, there is no statutory notice of the possibility of impound, no hearing

9    procedure to retrieve the vehicle, and no criteria for determining when impound is appropriate.

10   For all of these reasons, it is patently unreasonable for the City to impound vehicles cited for a

11   violation of the permit scheme. Accordingly, this Court should declare that no impounds of tow

12   vehicles are constitutionally permitted for a simple violation of the permit scheme.

13

14   **V. THE PERMIT SCHEME IS AN UNCONSTITUTIONAL VIOLATION OF THE**

15   **COMMERCE CLAUSE**

16

17       Article I, section 8, clause 3 of the United States Constitution provides that "The Congress

18   shall have Power ... To regulate commerce ... among the several states...." The "dormant"

19   commerce clause operates to prohibit states from enacting laws which burden interstate

20   commerce.

21       Many towing firms provide towing services at great distance from their principal place of

22   business. (Hunter Dec. ¶4.) Some towing firms tow or haul vehicles from California to other

23   states, and from other states to California. This aspect of the business can involve towing cars

24   out of San Francisco to other states, and into San Francisco from other states. (Little Dec. ¶4.)

25   The City's permit scheme essentially imposes a "high toll" on towers passing through San

26   Francisco en route to other states, or on interstate towing and hauling services that begin or end

27   in San Francisco. (*Automobile Club of New York, Inc. v. Dykstra, supra*, 423 F.Supp.2d at p.

28   282.) This is a significant burden on interstate commerce, because the free flow of commerce

- 23 -

1   between the states is hampered when such costs are placed on the mere privilege of driving into,
2   out of, or through the City.

3   For the permit scheme to pass constitutional muster, it must be shown to apply evenhandedly
4   to effectuate a legitimate local public interest and that its effects on interstate commerce are only
5   incidental. (*Pike v. Bruce Church, Inc.* (1970) 397 U.S. 137, 142) The permit scheme cannot be
6   upheld if "the burden imposed upon such commerce is clearly excessive in relation to the
7   putative local benefits." (*Ibid.*)

> If a legitimate local purpose is found, then the question becomes one of degree.
> And the extent of the burden that will be tolerated will of course depend on the
> nature of the local interest involved, and on whether it could be promoted as well
> with a lesser impact on interstate activities.

(*Ibid.*)

In this case, there is no discernible legitimate public purpose other than raising revenue for
the City. As discussed previously, there is no public safety benefit from the scheme, and
certainly there is no benefit to be had from the collection of permit fees, other than to fill the
coffers of the City.

But even assuming some legitimate public purpose could be articulated, it is clear that the
"high toll" imposed on interstate towing and hauling could easily be avoided with the simple
expedient of eliminating the fees required for the permit. In other words, if the City does have a
desire to ensure towing firms and tow truck drivers have permits, they can do so without
imposing a substantial economic hardship on those engaged in interstate commerce by simply
issuing permits without collecting a fee. Whatever legitimate public purpose the City may enjoy
from their permit scheme should not be subsidized by those towing firms who are simply
practicing their constitutionally protected right to engage in interstate commerce. Like the
Federal District Court in *Automobile Club of New York, Inc. v. Dykstra, supra*, 423 F.Supp.2d at
p. 285, this Court should invalidate the fees because they create a "marked interference with
interstate and intrastate commerce."

*///*

-24-

# VI. DECLARATORY AND INJUNCTIVE RELIEF IS REQUIRED

In this action, Plaintiff CTTA seeks declaratory and injunctive relief. Specifically, Plaintiff seeks a declaration that the permit scheme is preempted by both state and federal law, that any impounds pursuant to the scheme are unconstitutional, and that the fees associated with the permit scheme are an unconstitutional burden on interstate commerce. In addition, Plaintiff seeks an order enjoining the enforcement of the permit scheme in light of the above infirmities.

The state and its political subdivisions, including municipalities, may be sued under Code of Civil Procedure section 1060, the Declaratory Relief Act. (*Tehachapi-Cummings County Water Dist., v. Armstrong* (1975) 49 Cal. App. 3d 992, 1000.) Moreover, it is settled that questions of statutory interpretation are traditionally reviewable in a declaratory relief action. (*Walker v. Los Angeles County* (1961) 55 Cal. 2d 626, 637.) Furthermore,

> A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court.

(*Cardellini v. Casey* (1986) 181 Cal. App. 3d 389, 395.) The requirements are met in this case because Plaintiff has alleged facts showing an actual controversy between its member towing companies and the City with respect to the interpretation, legality, and enforceability of the permit scheme. CTTA members have a property interest in their business and their tow trucks, both of which are jeopardized by the permit scheme.

This Court's guidance is needed so that CTTA members can know their legal rights and duties, and can make informed business decisions based upon the law. The present uncertainty as to whether the permit scheme is legal creates huge significant economic hardship on CTTA members. Some members to choose to obtain the permits (at a significant cost) which puts them at a competitive disadvantage to their competitors. Others elect not to purchase the permits, which puts them at risk of citation, fine, imprisonment and impound of their vehicles. It also inhibits their ability to do business in and around the City.

1   Prohibitory injunctive relief is required in this case to stop the ongoing enforcement of the
2   legally invalid permit scheme. "Preventive relief is given by prohibiting a party from doing that
3   which ought not to be done." (Civil Code sec. 3368.) It is well settled that where the
4   enforcement of a statute may cause irreparable injury, the injured party may seek to enjoin its
5   enforcement. (*McKay Jewelers, Inc. v. Bowron* (1942) 19 Cal.2d 595, 599.) Moreover,
6   injunctive relief may be granted against illegal enforcement of valid statutes. (*Startrack, Inc. v.*
7   *County of Los Angeles* (1976) 65 Cal.App.3d 451, 457.)

8   A preliminary injunction may issue if it is "reasonably probable that the moving party will
9   prevail on the merits." (*San Francisco Newspaper Printing Co., Inc. v. Superior Court (Miller)*
10  (1985) 170 Cal.App.3d 438, 442.) For all of the reasons stated in the preceding arguments,
11  plaintiff will likely prevail. There is settled decisional law from both the California Supreme
12  Court and the United States Supreme Court unambiguously supporting the arguments set forth in
13  the complaint. Moreover, the balance of equities favors the plaintiff. If enforcement of the
14  permit scheme is allowed to continue, plaintiffs will continue to suffer injury, whereas as the
15  City loses nothing from the cessation of enforcement. (See, e.g., *Shoemaker v. County of Los*
16  *Angeles* (1995) 37 Cal.App.4th 618, 633.) None of its rights will be harmed. The most that can
17  be said is that the City may suffer some loss of revenue in permit fees, but that can easily be
18  recouped if the City ultimately prevails. Accordingly, a preliminary and permanent injunction
19  should issue.

20

21

22

23

24

25

26

27

28

- 26 -

**CONCLUSION**

WHEREFORE, Plaintiff CTTA respectfully prays that:

1. This Court issue a declaration that the City's permit scheme is preempted by federal law;

2. This Court issue a declaration that the City's permit scheme is preempted by state law;

3. This Court issue a declaration that the impounds of tow cars alleged to be in violation of the City's permit scheme is unconstitutional;

4. This court issue a declaration that the permit scheme is an unconstitutional regulation of interstate commerce;

5. This Court issue a preliminary and permanent injunction prohibiting Defendant from enforcing the permit scheme;

6. Plaintiff be awarded attorneys fees and costs of suit incurred in this action.

THE LAW OFFICES OF BROOKS ELLISON

Dated: 7-13-2010

PATRICK J. WHALEN

Attorneys for Plaintiff
CALIFORNIA TOW TRUCK
ASSOCIATION

- 27 -

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346
   E-mail: attorneys@ellisonlawoffices.com
6
7  Attorneys for Plaintiff



ENDORSED
Superior Court of California

JUL 1 3 2010

CLERK OF THE COURT
BY: WESLEY RAMIREZ
Deputy Clerk

8

9           SUPERIOR COURT OF CALIFORNIA

10            COUNTY OF SAN FRANCISCO

11

12 CALIFORNIA TOW TRUCK ASSOCIATION       Case No.  CGC-10-501458

13          Plaintiff,                    DECLARATION OF BOB BERRY
   vs.                                    IN SUPPORT OF VERIFIED
14                                         COMPLAINT FOR DECLARATORY
   CITY AND COUNTY OF SAN FRANCISCO       AND INJUNCTIVE RELIEF
15 and DOES 1-50                          REGARDING VALIDITY AND
                                          ENFORCEMENT OF SAN
16          Defendants.                   FRANCISCO
17                                         POLICE CODE SECTIONS 3000 ET
                                          SEQ. AND 3050 ET SEQ.
18
                                          (Code of Civ. Proc. §§ 525 and 1060)
19

20                                         Date:   August 19, 2010
                                          Time:   9:30 a.m.
21                                         Dept.:  302

22

23

24      I, Bob Berry, declare as follows:

25 1.   I am the owner and President of Berry Brothers Towing and Transport, Inc.  My

26 company's principal place of business is 598 5th Street in Oakland, California, 94609.

27

28

                                    1

Declaration of Bob Berry

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346
   E-mail: attorneys@ellisonlawoffices.com
6
   Attorneys for Plaintiff
7

8

9                    SUPERIOR COURT OF CALIFORNIA

10                      COUNTY OF SAN FRANCISCO

11

12  CALIFORNIA TOW TRUCK ASSOCIATION        Case No. CGC-10-501458

13              Plaintiff,                   **DECLARATION OF BOB BERRY**
              vs.                            **IN SUPPORT OF VERIFIED**
14                                           **COMPLAINT FOR DECLARATORY**
                                             **AND INJUNCTIVE RELIEF**
15  CITY AND COUNTY OF SAN FRANCISCO         **REGARDING VALIDITY AND**
    and DOES 1-50                            **ENFORCEMENT OF SAN FRANCISCO**
16                                           **POLICE CODE SECTIONS 3000 ET**
              Defendants.                    **SEQ. AND 3050 ET SEQ.**
17
                                             (Code of Civ. Proc. §§ 525 and 1060)
18

19
                                             Date:   August 19, 2010
20                                           Time:   9:30 a.m.
                                             Dept.:  302
21

22

23      I, Bob Berry, declare as follows:

24  1.      I am the owner and President of Berry Brothers Towing and Transport, Inc. My

25  company's principal place of business is 598 5th Street in Oakland, California, 94609.

26  2.      My company operates a fleet of 14 tow trucks and employs 12 drivers. I perform towing

27  services throughout the greater Bay Area and my drivers regularly travel through various cities

28  and counties in the course of their regular duties.

                                       - 1 -

Declaration of Bob Berry

3.      All of my vehicles are subject to inspection by the California Highway Patrol and are regularly inspected by them. All of my drivers are subject to background checks by the California Highway Patrol and all have passed those checks. In addition, some of my drivers are subject to extensive background checks by the Department of Justice in order to transport hazardous materials.

4.      As part of my business, my drivers tow cars from one location outside of San Francisco to another location outside of San Francisco, but are required to drive through San Francisco to reach their destination. My drivers also tow cars from locations outside of San Francisco to destinations within the City and County of San Francisco, which requires them to drive into San Francisco. My drivers also tow cars from locations within San Francisco to destinations outside of San Francisco, which also requires them to drive into San Francisco. My drivers also occasionally need to drive through San Francisco in their tow truck to get to a destination outside of San Francisco to perform tow services.

5.      I am aware that the City and County of San Francisco has an ordinance that prohibits any person from driving or operating a tow car within the City and County of San Francisco without first obtaining a permit from the Chief of Police. I am also aware that the City and County of San Francisco has an ordinance that prohibits any person from engaging in business as a tow car firm within the City and County of San Francisco without first obtaining a permit from the Chief of Police.

6.      I am aware that the City and County of San Francisco has recently impounded several tow trucks owned and operated by some of my colleagues in the towing business because they failed to obtain the requisite permits.

7.      I have chosen not to obtain a permit from the City and County of San Francisco. It is my understanding that the permit process is expensive, with application fees and taxes totaling several thousand dollars per firm, with additional fees imposed for each additional truck or driver for which a permit is obtained. If I had to pay the permit fees, it would directly impact the price of the towing services I perform for my customers.

- 2 -

Declaration of Bob Berry

8.      Because I do not have a permit, my drivers are faced with the difficult choice of driving through San Francisco and facing citation or impound, or taking a longer route through the East Bay to their destination. As a result, the San Francisco ordinance directly impacts the route for my drivers, and directly impacts their ability to perform towing services, because avoiding the City of San Francisco can result in significantly longer response times for customers.

9.      The ordinance has also directly inhibited the growth of my business in the City and County of San Francisco, as I have refused to enter into contracts with some clients for fear of putting my drivers and tow trucks at risk.

10.     I have a valid motor carrier permit through the Department of Motor Vehicles. It is renewed each year upon payment of a fee to State of California. The motor carrier permit authorizes me to transport of property throughout the State of California, including any city, county, or other political subdivision of the State. The motor carrier permit cannot be obtained without proof of liability insurance. In addition, companies with employees are required to have proof of workers compensation insurance in order to obtain a motor carrier permit.

11.     My drivers are required to stop at truck scales on highways, and are all subject to a random enforcement program implemented by the California Highway Patrol during which they must provide a valid drivers license, registration, and insurance, as well as a safety inspection of their vehicle.


        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and based on my personal knowledge, and if called to testify to these facts, I would do so competently and truthfully.


        Executed this 30\ day of June, 2010, in Oakland, California.

Bob Berry

-3-

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346
   E-mail: attorneys@ellisonlawoffices.com
6
7  Attorneys for Plaintiff

8

9              SUPERIOR COURT OF CALIFORNIA

10                COUNTY OF SAN FRANCISCO

11

12  | CALIFORNIA TOW TRUCK ASSOCIATION | Case No. CGC-10-501458 |
|---|---|
13  | Plaintiff, | **DECLARATION OF JEFF HUNTER IN** |
   | vs. | **SUPPORT OF VERIFIED COMPLAINT** |
14  | | **FOR DECLARATORY AND** |
   | CITY AND COUNTY OF SAN FRANCISCO | **INJUNCTIVE RELIEF REGARDING** |
15  | and DOES 1-50 ' | **VALIDITY AND ENFORCEMENT OF** |
   | | **SAN FRANCISCO POLICE CODE** |
16  | Defendants. | **SECTIONS 3000 ET SEQ. AND 3050 ET** |
   | | **SEQ.** |
17  | | (Code of Civ. Proc. §§ 525 and 1060) |
18  | | |
19  | | |
   | | Date:  August 19, 2010 |
20  | | Time:  9:30 a.m. |
   | | Dept.:  302 |
21

22

23      I, Jeff Hunter, declare as follows:

24  .1.     I am the Executive Director of the California Tow Truck Association ("CTTA"). The

25  mission of CTTA is to advance the professional interests of towing companies and enhance their

26  ability to serve law enforcement and the motoring public.

27

28

                                    1

Declaration of Jeff Hunter

ENDORSED
Superior Court of California

JUL 1 3 2010

CLERK OF THE COURT
BY: WESLEY RAMIREZ
                    Deputy Clerk

BY FACSIMILE

COPY

1   BROOKS ELLISON
    State Bar No. 122705
2   PATRICK J. WHALEN
    State Bar No. 173489
3   THE LAW OFFICES OF BROOKS ELLISON
    1725 Capitol Ave.
4   Sacramento, CA 95811
    Telephone: (916) 448-2187
5   Facsimile: (916) 448-5346
    E-mail: attorneys@ellisonlawoffices.com
6
    Attorneys for Plaintiff
7

8

9                    SUPERIOR COURT OF CALIFORNIA

10                      COUNTY OF SAN FRANCISCO

11

12  CALIFORNIA TOW TRUCK ASSOCIATION  |  Case No. CGC-10-501458

13              Plaintiff,              |  **DECLARATION OF JEFF HUNTER IN
         vs.                           |  SUPPORT OF VERIFIED COMPLAINT
14                                      |  FOR DECLARATORY AND
                                        |  INJUNCTIVE RELIEF REGARDING
15  CITY AND COUNTY OF SAN FRANCISCO    |  VALIDITY AND ENFORCEMENT OF
    and DOES 1-50                      |  SAN FRANCISCO POLICE CODE
16                                      |  SECTIONS 3000 ET SEQ. AND 3050 ET
                                        |  SEQ.**
17              Defendants.             |
                                        |  (Code of Civ. Proc. §§ 525 and 1060)
18

19

20                                      |  Date:   August 19, 2010
                                        |  Time:   9:30 a.m.
21                                      |  Dept.:  302

22

23         I, Jeff Hunter, declare as follows:

24  1.     I am the Executive Director of the California Tow Truck Association ("CTTA"). The

25  mission of CTTA is to advance the professional interests of towing companies and enhance their

26  ability to serve law enforcement and the motoring public.

27

28

                                      - 1 -

    Declaration of Jeff Hunter

2.      CTTA's is a nonprofit corporation organized and existing under the laws of the state of California, with its principal place of business in Palm Springs, in the County of Riverside, California.

3.      CTTA has approximately 1,000 member companies doing business throughout the state of California.  Member companies range in size from small family-run businesses with only one or two tow trucks to large companies with fleets of dozens of tow trucks.

4.      While all towing companies have a principal place of business, many provide towing services at great distance from their principal place of business.  Their operations are not restricted to only the city or county in which their principal place of business is located.  Most of CTTA's members conduct towing operations in multiple counties and in and around dozens of cities throughout California.

5.      It is not uncommon for a tow operator to pick up a vehicle in one city, tow it through one or more cities or counties, and deliver to a residence, storage yard, salvage lot, or repair facility in a different city or county.

6.      I am personally aware of the fact that many CTTA members based in and around the greater Bay Area, but outside of the City and County of San Francisco, regularly conduct towing operations that requires them to drive into and through the City and County of San Francisco. This is true even if the vehicle for which they are providing service is not located within the boundaries of the City and County of San Francisco.

7.      CTTA makes safety training available to all of its members and their employees.  Our training programs span several days and include such topics as:

Safe Driving Practices

Safe Towing Capacity

Hazardous Materials

Appearance & Conduct

Incident Management

Safety during road service

Impounded and stored vehicle protocol

-2-

Declaration of Jeff Hunter

1    General towing precautions

2    Release Procedures

3    Customer Service

4

5    Our training classes provide both classroom and hands on instruction, and all courses conclude

6    with a rigorous testing process that training participants must pass before getting certification.

7    8.      CTTA members who perform heavy duty towing operating 3 axle trucks in excess of

8    10,000 GVWR (gross vehicle weight rating) or operating vehicle combinations in excess of 40

9    feet, are subject to Biennial Inspection Terminal ("BIT") by the California Highway Patrol.

10   They are also required to undergo drug and alcohol testing.

11   9.      All towing companies are required to have a valid motor carrier permit which cannot be

12   obtained without proof of liability insurance.  In addition, companies with employees are

13   required to have proof of workers compensation insurance in order to obtain a motor carrier

14   permit.  All tow trucks are required to stop at truck scales on highways, and are all subject to a

15   random enforcement program implemented by the California Highway Patrol during which they

16   must provide a valid driver license, registration, motor carrier permit and insurance, as well as a

17   safety inspection of their vehicle.

18   10.     CTTA Members have been harassed and subject to citations, fines, and in some cases the

19   impound of their tow truck by the City and County of San Francisco for failing to obtain a

20   permit.

21   11.     The ability of CTTA members to conduct their business is adversely affected by the San

22   Francisco ordinance, because it subjects them to great uncertainty as to whether they are able to

23   conduct business in, around, and through the City and County of San Francisco.

24   12.     The vast majority of CTTA members participate in the California Highway Patrol

25   ("CHP") rotation system.  CHP requires all participants to sign a detailed Tow Service

26   Agreement ("TSA").  A true and correct copy of the 2009-10 TSA is attached to this declaration

27   as Exhibit A.  Pursuant to the TSA, tow operators must
         • have a minimum of 3 years experience;
28       • participate in a drug and alcohol testing program;

-3-

Declaration of Jeff Hunter

- maintain minimum staffing levels and hours of operation;
- meet maximum response times;
- have an adequate storage facility;
- meet minimum equipment specifications;
- allow CHP to inspect all trucks at least one per year;.
- charge reasonable rates;
- maintain minimum levels of insurance;
- adhere to a code of conduct;

Failure to adhere to any of the foregoing requirements can result in expulsion from the CHP rotation system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and based on my personal knowledge, and if called to testify to these facts, I would do so competently and truthfully.

Executed this 30th day of June, 2010, in Palm Springs, California.

Jeff Hunter

-4-

Declaration of Jeff Hunter

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346
   E-mail: attorneys@ellisonlawoffices.com
6
   Attorneys for Plaintiff
7


ENDORSED
FILED
Superior Court of California
County of San Francisco

JUL 1 3 2010

CLERK OF THE COURT
BY: WESLEY RAMIREZ
              Deputy Clerk

BY FACSIMILE

8
9              SUPERIOR COURT OF CALIFORNIA
10                COUNTY OF SAN FRANCISCO
11

12  CALIFORNIA TOW TRUCK ASSOCIATION        Case No. CGC-10-501458

13            Plaintiff,                     DECLARATION OF GEORGE LITTLE
          vs.                                IN SUPPORT OF VERIFIED
14                                           COMPLAINT FOR DECLARATORY
                                             AND INJUNCTIVE RELIEF
15  CITY AND COUNTY OF SAN FRANCISCO         REGARDING VALIDITY AND
    and DOES 1-50                            ENFORCEMENT OF SAN
16                                           FRANCISCO
            Defendants.                      POLICE CODE SECTIONS 3000 ET
17                                           SEQ. AND 3050 ET SEQ.

18                                           (Code of Civ. Proc. §§ 525 and 1060)

19

20                                           Date:  August 19, 2010
                                             Time:   9:30 a.m.
21                                           Dept.:  302

22

23
        I, George Little, declare as follows:
24
25  1.    I am the owner and President of College Oak Towing and COT Transportation, Inc. The

26  principal place of business for both companies is 4125 Winters Street, Sacramento, California

27  95838.

28

                                1

Declaration of George Little

1    BROOKS ELLISON
     State Bar No. 122705
2    PATRICK J. WHALEN
     State Bar No. 173489
3    THE LAW OFFICES OF BROOKS ELLISON
     1725 Capitol Ave.
4    Sacramento, CA 95811
     Telephone: (916) 448-2187
5    Facsimile: (916) 448-5346
     E-mail: attorneys@ellisonlawoffices.com
6
     Attorneys for Plaintiff
7

8

9                    SUPERIOR COURT OF CALIFORNIA

10                      COUNTY OF SAN FRANCISCO

11

12   CALIFORNIA TOW TRUCK ASSOCIATION        Case No.  CGC-10-501458

13          Plaintiff,                        DECLARATION OF GEORGE LITTLE
            vs.                               IN SUPPORT OF VERIFIED
14                                            COMPLAINT FOR DECLARATORY
                                              AND INJUNCTIVE RELIEF
15   CITY AND COUNTY OF SAN FRANCISCO         REGARDING VALIDITY AND
     and DOES 1-50                            ENFORCEMENT OF SAN FRANCISCO
16                                            POLICE CODE SECTIONS 3000 ET
            Defendants.                       SEQ. AND 3050 ET SEQ.
17
                                              (Code of Civ. Proc. §§ 525 and 1060)
18

19

20                                            Date:   August 19, 2010
                                              Time:   9:30 a.m.
21                                            Dept.:  302

22

23          I, George Little, declare as follows:

24   1.     I am the owner and President of College Oak Towing and COT Transportation, Inc.  The

25   principal place of business for both companies is 4125 Winters Street, Sacramento, California

26   95838.

27   2.     My companies operate a fleet of approximately 22 tow trucks and 8 tractor trailers and

28   employ approximately 30 drivers.  I perform towing services throughout California, Arizona,

                                    - 1 -

     Declaration of George Little

1  Oregon, and Nevada, and I perform hauling services of rolling stock throughout the United

2  States and my drivers regularly travel through various states, as well through various cities and

3  counties within California in the course of their regular duties.

4  3.    All of my vehicles are subject to inspection by the California Highway Patrol and are

5  regularly inspected by them. All of my drivers are subject to background checks by the

6  California Highway Patrol and all have passed those checks. In addition, some of my drivers are

7  subject to extensive background checks by the Department of Justice in order to transport

8  hazardous materials.

9  4.    As part of my business, I perform towing services and hauling services that involve

10  towing vehicles from within the State of California to other states. I also perform towing

11  services that involve towing vehicles from other states into California. Part of my business

12  involves towing or hauling vehicles out of San Francisco to locations in other states, as well as

13  towing or hauling vehicles from other states into San Francisco.

14  5.    In addition to my interstate services, my drivers tow or haul cars, trucks, buses, and

15  motorhomes from one location outside of San Francisco to another location outside of San

16  Francisco, but are required to drive through San Francisco to reach their destination. My drivers

17  also tow cars and commercial vehicles from locations outside of San Francisco to destinations

18  within the City and County of San Francisco, which requires them to drive into San Francisco.

19  My drivers also tow vehicles from locations within San Francisco to destinations outside of San

20  Francisco, which also requires them to drive into San Francisco. My drivers also occasionally

21  need to drive through San Francisco in their tow truck or tractor trailer to get to a destination

22  outside of San Francisco to perform tow services.

23  6.    I am aware that the City and County of San Francisco has an ordinance that prohibits any

24  person from driving or operating a tow car or tractor trailer within the City and County of San

25  Francisco without first obtaining a permit from the Chief of Police.  I am also aware that the

26  City and County of San Francisco has an ordinance that prohibits any person from engaging in

27  business as a tow car firm within the City and County of San Francisco without first obtaining a

28  permit from the Chief of Police.

-2-

Declaration of George Little

7. I am aware that the City and County of San Francisco has recently impounded several tow trucks owned and operated by some of my colleagues in the towing business because they failed to obtain the requisite permits.

8. I have chosen not to obtain a permit from the City and County of San Francisco. It is my understanding that the permit process is expensive, with application fees and taxes totaling several thousand dollars per firm, with additional fees imposed for each additional truck or driver for which a permit is obtained. If I had to pay the permit fees, it would directly impact the price of the towing and hauling services I perform for my customers.

9. Because I do not have a permit, my drivers are faced with the difficult choice of driving through San Francisco and facing citation or impound, or taking a longer route through the East Bay to their destination. As a result, the San Francisco ordinance directly impacts the route for my drivers, and directly impacts their ability to perform towing and hauling services, because avoiding the City of San Francisco can result in significantly longer response times for customers.

10. The ordinance has also directly inhibited the growth of my business in the City and County of San Francisco, as I have refused to enter into contracts with some clients for fear of putting my drivers and tow trucks at risk.

11. The ordinance hampers my ability to compete effectively with other interstate towing or hauling businesses, because the ordinance represents an additional cost on my interstate transportation services whenever my customers require their vehicles to be towed to, from, or through San Francisco. San Francisco's population, commerce, and geographic location make it a relatively common starting or destination point for interstate towing and hauling services. In addition, the fact that both State Route 101 and Interstate 80 run through the city makes it likely that interstate towing services will require traveling to, from, or through the city.

12. I have a valid motor carrier permit through the Department of Motor Vehicles. It is renewed each year upon payment of a fee to State of California. The motor carrier permit authorizes me to transport property throughout the State of California, including any city, county, or other political subdivision of the State. The motor carrier permit cannot be obtained without

- 3 -

Declaration of George Little

1   proof of liability insurance. In addition, companies with employees are required to have proof of

2   workers compensation insurance in order to obtain a motor carrier permit. In addition, pursuant

3   to certain agreements, with law enforcement agencies, my tow trucks are required to have "on-

4   hook" insurance coverage with a minimum of $50,000 for small tow trucks and $250,000 for

5   larger tow trucks. Tractor trailers are required to have cargo insurance.

6   13.     My drivers are required to stop at truck scales on highways, and are all subject to a

7   random enforcement program implemented by the California Highway Patrol during which they

8   must provide a valid drivers license, registration, and insurance, as well as a safety inspection of

9   their vehicle. All of my heavy duty drivers are also required to enter into a pull notice program

10  with the Department of Motor Vehicles which monitors any activity on their driver license and

11  notifies me of any ticket, or other violation. They are also required to participate in a drug and

12  alcohol testing program. My interstate vehicles are required to have a United States Department

13  of Transportation Number in addition to a the CA number accompanying the motor carrier

14  permit.

15

16       I declare under penalty of perjury under the laws of the State of California that the

17  foregoing is true and correct and based on my personal knowledge, and if called to testify to

18  these facts, I would do so competently and truthfully.

19       Executed this _30_ day of June, 2010, in Oakland, California.

20

21  *George W. Little*

22  George Little

23

24

25

26

27

28

-4-

Declaration of George Little

1 | BROOKS ELLISON
State Bar No. 122705
2 | PATRICK J. WHALEN
State Bar No. 173489
3 | THE LAW OFFICES OF BROOKS ELLISON
1725 Capitol Ave.
4 | Sacramento, CA 95811
Telephone: (916) 448-2187
5 | Facsimile: (916) 448-5346
E-mail: attorneys@ellisonlawoffices.com
6
Attorneys for Plaintiff
7

ENDORSED
FILED
Superior Court of California
County of San Francisco

JUL 1 3 2010

CLERK OF THE COURT
BY: WESLEY RAMIREZ
Deputy Clerk



8

9 | SUPERIOR COURT OF CALIFORNIA

10 | COUNTY OF SAN FRANCISCO

11

12 | CALIFORNIA TOW TRUCK ASSOCIATION | Case No. CGC-10-501458

13 | Plaintiff,
vs.
14

15 | CITY AND COUNTY OF SAN FRANCISCO
and DOES 1-50
16

17 | Defendants.

18

19

20

21

22

DECLARATION OF KHURRAM SHAH
IN SUPPORT OF VERIFIED
COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
REGARDING VALIDITY AND
ENFORCEMENT OF SAN
FRANCISCO
POLICE CODE SECTIONS 3000 ET
SEQ. AND 3050 ET SEQ.

(Code of Civ. Proc. §§ 525 and 1060)

Date: August 19, 2010
Time: 9:30 a.m.
Dept.: 302

23

24 | I, Khurram Shah, declare as follows:

25 | 1. I am the owner and President of K and S Towing and Transport, Inc. My company's

26 | principal place of business is 2780 Willow Pass Road in Bay Point, California, 94565.

27

28

1

Declaration of Khurram Shah

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346
   E-mail: attorneys@ellisonlawoffices.com
6
   Attorneys for Plaintiff
7

8

9                    SUPERIOR COURT OF CALIFORNIA

10                    COUNTY OF SAN FRANCISCO

11

12  CALIFORNIA TOW TRUCK ASSOCIATION        Case No. CGC-10-501458

13                Plaintiff,               DECLARATION OF KHURRAM SHAH
                  vs.                      IN SUPPORT OF VERIFIED
14                                         COMPLAINT FOR DECLARATORY
                                           AND INJUNCTIVE RELIEF
15  CITY AND COUNTY OF SAN FRANCISCO        REGARDING VALIDITY AND
    and DOES 1-50                          ENFORCEMENT OF SAN FRANCISCO
16                                         POLICE CODE SECTIONS 3000 ET
                  Defendants.              SEQ. AND 3050 ET SEQ.
17
                                           (Code of Civ. Proc. §§ 525 and 1060)
18

19
                                           Date:   August 19, 2010
20                                         Time:   9:30 a.m.
                                           Dept.:  302
21

22

23      I, Khurram Shah, declare as follows:

24  1.      I am the owner and President of K and S Towing and Transport, Inc. My company's

25  principal place of business is 2780 Willow Pass Road in Bay Point, California, 94565.

26  2.      My company operates a fleet of 39 tow trucks and employs 40 drivers. I perform towing

27  services throughout Northern California including the greater Bay Area and my drivers regularly

28  travel through various cities and counties in the course of their regular duties.

                                    - 1 -

Declaration of Khurram Shah

3.     All of my vehicles are subject to inspection by the California Highway Patrol and are regularly inspected by them. All of my drivers are subject to background checks by the California Highway Patrol and all have passed those checks. In addition, some of my drivers are subject to extensive background checks by the Department of Justice in order to transport hazardous materials.

4.     As part of my business, my drivers tow cars from one location outside of San Francisco to another location outside of San Francisco, but are required to drive through San Francisco to reach their destination. My drivers also tow cars from locations outside of San Francisco to destinations within the City and County of San Francisco, which requires them to drive into San Francisco. My drivers also tow cars from locations within San Francisco to destinations outside of San Francisco, which also requires them to drive into San Francisco. My drivers also occasionally need to drive through San Francisco in their tow truck to get to a destination outside of San Francisco to perform tow services.

5.     Pursuant to the Municipal Code of the City and County of San Francisco, I have obtained a tow car permit for my business. In order to obtain this permit, I had to pay an initial application fee of $785 to the Police Department. Once I received preliminary approval, I was required to pay an additional $1006.50 for a "license tax" to the City of San Francisco. It is my understanding that that tax covered three of my trucks.

6.     In addition, I had to pay $360 to obtain a permit for each driver. I added three drivers for a total of $1080.00. Each driver had to take time out of their job, get passport photos, obtain their drivers license printout from DMV, and then attend a hearing. Once they were approved, I had to pay an additional $45 for an identification card for each driver, for a total of $135.

7.     To date I have paid more than $3000 to obtain a permit for my firm and three of my drivers. These fees are subject to renewal on an annual basis.

8.     Since initiating the permit application process, neither my business premises nor any of my trucks have ever been subjected to any safety inspections by the City and County of San Francisco.

-2-

Declaration of Khurram Shah

1    9.     My workload in San Francisco is such that I need to add six more drivers and trucks to
2    maintain my business. I will incur additional costs in obtaining permits for these additional
3    drivers.

4    10.     Because of the costs of obtaining the permits, my cost of doing business has significantly
5    increased. While my current customer base I subject to long-term contracts, my present intention
6    is to adjust my pricing structure to reflect the increased cost of the San Francisco permits as soon
7    as those contracts are up for renewal.

8    11.     Because only a small portion of my drivers and trucks are properly permitted, I am forced
9    to adjust the routes for my other drivers. When they are responding to calls that would require
10    them to pass through the City and County of San Francisco, they have to take an alternate route
11    to avoid entering the city without a permit.

12    12.     As a result of the impact on the routes they are permitted to drive, the service to my
13    customers is directly impacted. The longer routes result in delayed response times and create the
14    need for additional staffing in order to provide the service for which my customers have
15    contracted.

16    13.     I am aware that the City and County of San Francisco has recently impounded several
17    tow trucks owned and operated by some of my colleagues in the towing business because they
18    failed to obtain the requisite permits.

19    14.     The ordinance has also directly inhibited the growth of my business in the City and
20    County of San Francisco, as I have refused to enter into contracts with some clients because I do
21    not presently have the ability to obtain the necessary permits to service those prospective clients.

22    15.     I have a valid motor carrier permit through the Department of Motor Vehicles. It is
23    renewed each year upon payment of a fee to State of California. The motor carrier permit
24    authorizes me to transport of property throughout the State of California, including any city,
25    county, or other political subdivision of the State. The motor carrier permit cannot be obtained
26    without proof of liability insurance. In addition, companies with employees are required to have
27    proof of workers compensation insurance in order to obtain a motor carrier permit.

28

-3-

Declaration of Khurram Shah

16.     My drivers are required to stop at truck scales on highways, and are all subject to a random enforcement program implemented by the California Highway Patrol during which they must provide a valid drivers license, registration, and insurance, as well as a safety inspection of their vehicle.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and based on my personal knowledge, and if called to testify to these facts, I would do so competently and truthfully.

Executed this _____ day of June, 2010, in Bay Point, California.

_____

Khurram Shah

- 4 -

Declaration of Khurram Shah

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICES OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95811
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5346
   E-mail: attorneys@ellisonlawoffices.com
6
7  Attorneys for Plaintiff
8
9  **ENDORSED**
   Superior Court of California
   JUL 1 3 2010
   CLERK OF THE COURT
   BY:  WESLEY RAMIREZ
        Deputy Clerk

BY FACSIMILE

8

9              SUPERIOR COURT OF CALIFORNIA

10                COUNTY OF SAN FRANCISCO

11

12  | CALIFORNIA TOW TRUCK ASSOCIATION | Case No.  CGC-10-501458 |
    |---|---|
    |                  Plaintiff, | **DECLARATION OF PATRICK WHALEN  IN SUPPORT OF VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF REGARDING VALIDITY AND ENFORCEMENT OF SAN FRANCISCO POLICE CODE SECTIONS 3000 ET SEQ. AND 3050 ET SEQ.** |
    |              vs. | |
    | CITY AND COUNTY OF SAN FRANCISCO and DOES 1-50 | |
    |                  Defendants. | |
    | | (Code of Civ. Proc. §§ 525 and 1060) |
    | | Date:  August 19, 2010
    Time:  9:30 a.m.
    Dept.:  302 |

13
14
15
16
17
18
19
20
21
22

23         I, Patrick Whalen, declare as follows:

24  1.     I am the attorney for the plaintiff/petitioner in the above entitled action.

25  2.     Attached to this declaration as Exhibit A is a true and correct copy of Article 30 of the

26  City and County of San Francisco Police Code beginning with section 3000 and which concerns

27  permits for tow drivers.

28

                                    1

Declaration of Jeff Hunter

1  | BROOKS ELLISON
State Bar No. 122705
2  | PATRICK J. WHALEN
State Bar No. 173489
3  | THE LAW OFFICES OF BROOKS ELLISON
1725 Capitol Ave.
4  | Sacramento, CA 95811
Telephone: (916) 448-2187
5  | Facsimile: (916) 448-5346
E-mail: attorneys@ellisonlawoffices.com
6
Attorneys for Plaintiff
7

8

9              SUPERIOR COURT OF CALIFORNIA

10              COUNTY OF SAN FRANCISCO

11

12  | CALIFORNIA TOW TRUCK ASSOCIATION          Case No.  CGC-10-501458

13              Plaintiff,                     **DECLARATION OF PATRICK
            vs.                               WHALEN IN SUPPORT OF VERIFIED**
14                                            **COMPLAINT FOR DECLARATORY
                                              AND INJUNCTIVE RELIEF**
15  | CITY AND COUNTY OF SAN FRANCISCO          **REGARDING VALIDITY AND
and DOES 1-50                                 ENFORCEMENT OF SAN FRANCISCO**
16                                            **POLICE CODE SECTIONS 3000 ET
            Defendants.                       SEQ. AND 3050 ET SEQ.**
17
                                              (Code of Civ. Proc. §§ 525 and 1060)
18

19
                                              Date:   August 19, 2010
20                                            Time:   9:30 a.m.
                                              Dept.:  302
21

22

23      I, Patrick Whalen, declare as follows:

24  1.      I am the attorney for the plaintiff/petitioner in the above entitled action.

25  2.      Attached to this declaration as Exhibit A is a true and correct copy of Article 30 of the

26  City and County of San Francisco Police Code beginning with section 3000 and which concerns

27  permits for tow drivers.

28

- 1 -

Declaration of Jeff Hunter

1  3.    Attached to this declaration as Exhibit B is a true and correct copy of Article 30.1 of the
2  City and County of San Francisco Police Code beginning with section 3050 and which concerns
3  permits for tow car firms.

4  4.    Attached to this Declaration as Exhibit C is a true and correct copy of a Declaration of
5  Peter Koehler which was previously submitted to the United States District Court, Northern
6  District of California.  Petitioner/Plaintiff is not a party to that litigation, and obtained the
7  Declaration of Peter Koehler from the federal court's file in that case.

8  .

9       I declare under penalty of perjury under the laws of the State of California that the
10  foregoing is true and correct and based on my personal knowledge, and if called to testify to
11  these facts, I would do so competently and truthfully.

12       Executed this 30th day of June, 2010, in Sacramento, California.

13

14

15  Patrick Whalen

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

Declaration of Jeff Hunter