IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TOW TRUCK ASSOCIATION,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY & COUNTY OF SAN FRANCISCO,<br><br>    Defendant.<br>_____/ | No. C 10-03184 CRB<br><br>**ORDER GRANTING SUMMARY JUDGMENT ON FEDERAL CLAIMS AND REMANDING TO STATE COURT FOR A DETERMINATION OF STATE LAW ISSUES** |

This case concerns San Francisco's ordinances requiring tow firms and tow truck drivers to pay fees and receive permits for the privilege of doing business in San Francisco (the "Permit System"). Plaintiff, the California Tow Truck Association ("CTTA"), brought suit seeking a declaratory judgment that the Permit System (1) is preempted by federal and state law; (2) violates the dormant commerce clause; (3) violates the Fourth Amendment; and (4) violates California state tax law by imposing impermissible fees.

The parties have filed cross motions for summary judgment on the federal claims, and CTTA has filed a motion for summary judgment on the state law claims. The Court holds as follows with respect to federal preemption: <u>The Permit System is preempted to the extent it applies to tow drivers or tow firms engaged in towing activity other than non-consensual towing</u>. The City is hereby ENJOINED from applying the Permit System to drivers and/or firms engaged exclusively in consensual towing or merely passing through the City. This Injunction is STAYED pending appeal because the issues raised in this case are important,

and the question is relatively close. If no appeal is filed by the City, the Injunction shall become effective January 15, 2011.[1]

## I.   LEGAL STANDARD

Summary judgment is properly entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The movant bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The movant is not required to produce evidence negating the non-movant's claims. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990) ("[T]he purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues"). If the movant carries its burden, the burden shifts to the nonmoving party to establish facts beyond the pleadings showing that there remains a triable issue of disputed material fact so that summary judgment is not appropriate. Celotex, 477 U.S. at 324; Adickes, 398 U.S. at 157.

To successfully rebut a properly supported summary judgment motion, the non-moving party must (1) point to some facts in the record that demonstrate a genuine issue of material fact and (2) show that, with all reasonable inferences made in its favor, a jury could reasonably find for it. Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). The non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.

---

[1] The City's Motion for Summary Judgment is GRANTED as to CTTA's dormant Commerce Clause and Fourth Amendment claims. Having disposed of the federal issues in this case, the Court declines to exercise supplemental jurisdiction over the remaining novel questions of state law and remands this matter to state court.

2

R. Civ. P. 56(e)).  The opposing party may not rest on conclusory allegations or mere assertions.  Rather, it must present significant probative evidence of specific facts raising a material issue that "can be resolved only by a finder of fact because [the issue] may reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 249-50, 256.

Here, the parties apparently agree that the factual record does not require further development for this Court to rule on summary judgment, at least as to the federal claims.

**II.   DISCUSSION**

The Permit System requires tow drivers and tow firms to obtain a permit, at some cost, to operate in the City.  San Francisco Police Code §§ 3000, 3051.  Permits are provided to drivers and firms that meet certain requirements relating, among other things, to (1) insurance; (2) facilities and equipment; (3) background (i.e. lack of criminal behavior); and (4) acceptance of credit card payments.  San Francisco Police Code § 3054.  Tow firms with permits are required to display them prominently and have at least 50 copies of a brochure, available in multiple languages, explaining relevant California law.  San Francisco Police Code § 3055.2(c).  Permits may be revoked for failing to comply with the regulations or for failing to pay required fees.

In deciding the federal issues in this case it is helpful to keep in mind three groups of tow drivers and tow firms ostensibly affected by the Permit System:  (1) those "passing through" the City;[2] (2) those engaged in consensual tows in the City; and (3) those engaged in non-consensual tows in the City.  Consensual towing involves an agreement between the car owner and the tow truck driver.  Non-consensual towing involves towing, often from private lots, improperly or "illegally" parked cars.  In non-consensual tows the car owner typically does not know that his car has been towed until he comes to retrieve it and it is not there.

//

---

[2] The City asserts that it does not enforce the permit requirement on those merely passing through the City, but on its face the Permit System applies to all tow truck drivers operating in the City. San Francisco Police Code § 3000.

**A.      Federal Preemption**

**1.      The Federal Aviation Administration Authorization Act**

CTTA argues that the Permit System is preempted by federal law. The starting point for CTTA's argument is the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). That Act provides, in part, that "[e]xcept as provided in paragraphs (2) and (3), a State [or] political subdivision of a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The parties agree that the Permit System is "related to" "price, route, or service" and that, accordingly, the preemption provision is applicable.

However, the FAAAA also contains exceptions to preemption for States (or political subdivisions of a State) to enact certain regulations. Regulations not preempted include those relating to:

- the exercise of a State's "safety regulatory authority . . . with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A).
- the "price" of non-consensual tow operations. Id. § 14501(c)(2)(c).
- ensuring "minimum amounts of financial responsibility relating to insurance requirements . . . ." Id. § 14501(c)(2)(a).

The Supreme Court has said with respect to the "safety regulatory authority" exception that "[l]ocal regulation of prices, routes, or services of tow trucks that is not <u>genuinely responsive to safety concerns</u> garners no exemption from § 14501(c)(1)'s preemption rule." <u>City of Columbus v. Ours Garage & Wrecker Serv., Inc.</u>, 536 U.S. 424, 429 (2002) (emphasis added).

The question of federal preemption turns on whether the Permit System falls within one or more of the delineated exceptions to preemption. Id.

**2.      The Permit System is Not Preempted As Applied to Non-Consensual Towing**

The Permit System is not preempted as applied to non-consensual towing because it falls within all three preemption exceptions. Keeping tabs on drivers and firms engaged in

4

non-consensual towing via a permit system makes it easier for the City to ensure that insurance requirements are being met and reasonable fees are being charged. Further, and more importantly given the extent of regulation, the provisions relating directly or indirectly to fees and insurance dovetail with the broader safety-related purposes of the Permit System – keeping tabs on drivers and firms engaged in the inherently dangerous business of non-consensual towing and weeding out at the front end those most likely to misbehave.

The Court will thus turn its attention to an explanation of why the Permit System is genuinely responsive to safety concerns as applied to the practice of non-consensual towing.

\* \* \*

Determining whether a City has properly regulated pursuant to its general "safety regulatory authority" requires a court to assess whether the challenged law is "genuinely responsive to safety concerns[.]" That analysis requires a two-step approach. First, "a court must consider any specific expressions of legislative intent in the statute itself as well as the legislative history." Automobile Club of New York, Inc. v. Dykstra, 520 F.3d 210, 215 (2d Cir. 2008). Second, "it must assess those 'purported safety justifications' . . . in light of the existing record evidence." Id.

### a.  Legislative Intent and Effect

The Permit System includes legislative "findings" reflecting the legislation's purpose. San Francisco Police Code § 3055.2. Those findings identify a safety concern with non-consensual tows. For example, the findings provide, among other things, that (1) "there is a significant risk to the safety of residents and visitors when illegal towing from private property occurs at night"; (2) "there is a risk to public health and safety when the vehicles of senior citizens and persons with disabilities are illegally towed from private property"; (3) "there are no accessible resources for people to research their rights and responsibilities with respect to private property tows"; and (4) "requiring tow car firms to provide information on the legal rights of vehicle owners at the time they reclaim their vehicle would be an effective way of informing vehicle owners of their rights under California law when their vehicle is towed from private property." Id. §§ ii, iii, vi, vii. The findings suggest that the Board of

5

Supervisors was concerned broadly with safety issues associated with non-consensual towing and in particular with "illegal" towing from private property at night. Id. §§ i, ii.

In addition to the foregoing, the California Legislature has determined that local permit systems serve safety objectives, especially in the context of non-consensual towing.

> [T]he safety and welfare of the general public is prompted by permitting local authorities to regulate tow truck service companies and operators by requiring licensure, insurance, and proper training in the safe operation of towing equipment, thereby ensuring against towing mistakes that may lead to violent confrontation, stranding motorists in dangerous situations, impeding the expedited vehicle recovery, and wasting state and local law enforcement's limited resources.

Cal. Veh. Code § 21100(g)(2). The bill's author noted some of the problems in the tow industry related in particular to non-consensual tows from private property. Statement of Assembly-member Jackie Goldberg, Request for Judicial Notice, Ex. E.

### b. Assessment of Purported Safety Justifications in Light of Record Evidence

In addition to the foregoing reflections of the Permit System's purpose, the City submitted the Declaration of Sergeant William Coggan. He provided evidence concerning the Permit System's operation and effect. Coggan Decl. (Dkt. 12). Among other things, Sergeant Coggan states that the Permit System (1) allows the Police Department to "screen company owners and their employees to ensure they have not previously engaged in dangerous and/or criminal conduct" that could create safety problems; id. ¶ 8; (2) helps the police assist drivers left stranded as a result of non-consensual tows and enables better assessment of allegations of wrongdoing (including allegations related to excessive fees) by tow drivers and tow firms, id. ¶¶ 10, 12; (3) enables the City to make sure proper trucks and equipment are being used and provides for safety inspections, id. ¶ 13, see also San Francisco Police Code § 3059; and (4) allows the City to revoke permits, thereby encouraging good behavior. Id. ¶¶ 21-23.

\* \* \*

The available legislative history and evidence of the Permit System's functioning suggest that the Permit System is genuinely responsive to safety concerns and thus is not

preempted insofar as it applies to non-consensual towing. Although there might be methods other than the Permit System that the City could use to combat the dangers associated with non-consensual towing – more aggressive prosecution of any driver or firm that over-charges or otherwise acts improperly – the preemption test asks merely whether the method the City has chosen is "genuinely responsive" to safety concerns. In the Court's view, it is.[3]

### 3. The Permit System is Preempted as Applied to Pass Through and Consensual Tows

The foregoing analysis is different in two ways with respect to firms and drivers (1) merely passing through the City[4] or (2) engaged only in consensual towing. First, the "price" exception does not apply to consensual or pass through tows. Second, because the legislative findings show that the Permit System was not enacted with consensual or pass through tows in mind, it is not genuinely responsive to safety concerns as applied to that conduct. Indeed, allowing a city to require a permit of this nature for consensual towing, in the absence of any indication that the public body was actually concerned about safety in that context, would result in the safety exception swallowing the preemption rule.

The Court recognizes that the Permit System contains some general safety provisions related to the actual act of towing as well as provisions regarding insurance. For example, the Permit System provides for safety inspections of tow trucks and provides that permits will not be issued if the applicant lacks "the requisite tow car equipment or facilities reasonably necessary to operate a tow car business in such a manner as to adequately protect vehicles of the public that are towed or stored from damage or theft." San Francisco Police

---

[3] CTTA argues that the Permit System ought to be preempted, even in the context of non-consensual tows, to the extent it applies to non-consensual towing from public property or towing during the day. That argument is rejected. It is true that the available legislative findings show that the Board of Supervisors was primarily motivated by a concern about non-consensual tows from private property at night. However, many of the same public safety issues are present when non-consensual tows are made from public property and/or occur during the day. The overarching public safety concern articulated by the Board of Supervisors related to non-consensual towing, and the Court declines to draw a line between private and public tows or day versus night.

[4] As mentioned, the City asserts that it does not apply the Permit System to pass through drivers and that, accordingly, CTTA lacks standing to challenge the Permit System's application to that class of activity. It is undisputed, however, that CTTA has standing as a general matter to challenge the City's Permit System as preempted under federal law.

7

1 Code § 3054, 3059.[5] But these provisions do not save the Permit System from preemption as
2 applied to consensual and pass through towing. This is because there are no legislative
3 findings that general towing safety motivated the Board of Supervisors to create the Permit
4 System. Further, if a city can apply a fairly extensive (and costly) permit system to all
5 towing activity by merely including within that system one or two provisions related to
6 general safety, the preemption analysis becomes a meaningless exercise.[6]

7       The Court's conclusion on this issue stems from its understanding of the analysis it is
8 required to undertake to determine whether a regulation is genuinely responsive to safety
9 concerns. If the test were merely whether the regulation is related to safety in some way, the
10 Court might reach a different a result. But the test, as the Court understands it, requires the
11 Court to review legislative expressions of intent and then determine whether the regulation
12 fairly serves to address the identified safety concerns. See Tillison v. City of San Diego, 406
13 F.3d 1126, 1129 (9th Cir. 2005) ("[T]he Supreme Court tells us that our focus in a
14 preemption case like this one is whether the purpose and intent of the body passing the law at
15 issue was truly safety."; "The focus of the safety exception to preemption must be on the
16 legislative intent and whether the legislature was acting out of safety concerns.").

17       To reiterate, the legislative findings reveal a concern about safety in the context of
18 non-consensual tows, and the Permit System helps the City address those concerns. But the
19 Court cannot go so far as to say that the purpose and intent of the Board of Supervisors in
20 applying the Permit System to firms and drivers engaged only in consensual towing was

---

[5] The Permit System also contains provisions related to minimum levels of insurance. San Francisco Police Code § 3058.

[6] This is not to say, of course, that the City cannot exercise its safety regulatory authority in the context of consensual tows. Indeed, the Board of Supervisors is invited to do so if it is unhappy with the outcome of this case. But there must be some indication that the Board has identified a safety concern in the context of consensual tows, and the regulations adopted to meet the identified safety concern (perhaps including a permit requirement) must be genuinely responsive to the safety concern.

As it stands now, not only are there no legislative findings regarding safety concerns in the consensual towing business, but the Permit System contains provisions ostensibly applicable to all tow firms – price for non-consensual tows, requirements for removal of vehicles from private property, requirements for brochures regarding the rights of someone seeking to recover a vehicle – that are not genuinely responsive to any apparent safety concern with consensual towing.

8

"truly related to safety" or that in applying the Permit System to such firms and drivers the Board of Supervisors "was acting out of safety concerns."

Accordingly, the Permit System is preempted insofar as it applies to drivers and firms engaged exclusively in consensual or pass through towing.

### 4. The Jurisprudence in this Area Supports this Result

The foregoing analysis is supported by a review of the caselaw.

For example, CTTA relies heavily on Dykstra, 520 F.3d at 215. Dykstra involved a challenge to New York City's licensing and registration system for tow firms in which, among other things, applicants had to pay fees, submit drivers to background checks, and provide proof of adequate insurance. Id. at 212. The Second Circuit held that the system was preempted by the FAAAA because it was not genuinely responsive to safety concerns. It reached that conclusion after conducting the two-step preemption analysis described above. First, it noted that the licensing system was enacted in large part to prevent "chasing," a practice in which tow truck operators monitor police radios and race to the scene of accidents. Id. at 215. The Court noted that:

> [T]he City may have been motivated by a desire to reduce chasing . . . but it did not explain why increased enforcement [of the prohibition of that activity] was insufficient. Instead of enforcing existing law, the City chose to impose its Scheme on all tow trucks that happened to be within its limits, regardless of whether they were chasing. The legislative history is silent on how those trucks not engaged in chasing, or those merely driving through New York City threaten public safety and how the expanded definition of 'towing' is genuinely responsive to those concerns.

Id. at 216. Second, the court determined that the record did not show any link between the licensing provision and a reduction in chasing. Id. Moreover, "[e]ven assuming that the Scheme has been effective in reducing chasing for accidents within New York City, the City has not articulated a reason why the Scheme must be enforced against all tow trucks anywhere within the City to reduce chasing, or how that broad enforcement is genuinely responsive to safety concerns." See also Northway Towing, Inc. v. City of Pasadena, Tex., 94 F. Supp. 2d 801, 803 (S.D. Tex. 2000) (finding local ordinances requiring permits and storage of vehicles

9

in state licensed depositories to be preempted because they did not fall within the safety exception).

Dykstra and Northway are similar to the instant case in several respects. However, those courts appear to have taken a narrower view of relevant safety interests than is appropriate in the Ninth Circuit and also to have imposed a "narrow tailoring" requirement that seems misplaced in this context. For example, in Tillison, 406 F.3d at 1126, the Ninth Circuit upheld a California statute requiring tow firms to obtain written authorization from a property owner for a non-consensual tow. In reaching its conclusion, the Ninth Circuit quoted with approval a California appellate decision that held that "[l]egislation which tends to assist members of the public from involuntarily losing the use of their vehicles and which tends to expedite recovery of their vehicles once they have been removed fairly and clearly promotes the safety and welfare of the public." Id. at 1130 (quoting Berry v. Hannigan, 7 Cal. App. 4th 587, 591 (1992)); see also Tillison v. Gregoire, 424 F.3d 1093, 1101-1104 (9th Cir. 2005) (finding no preemption of Washington law regulating non-consensual tows from private property and citing long line of cases reaching similar conclusions); Galactic Towing, Inc. v. City of Miami Beach, 341 F.3d 1249, 1252-53 (11th Cir. 2003) (local ordinances regarding non-consensual towing requiring permits, business applications, written authorization for tows, and storage within city limits fell within safety exception to FAAAA preemption) (citing, among other cases, Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d 765 (2d Cir. 1999) (ordinance requiring licensing, display of information, reporting, record keeping, disclosure of criminal history, insurance, posting of bond, and maintenance of storage facilities fell within safety exception); Hott v. City of San Jose, 92 F. Supp. 2d 996 (N.D. Cal. 2000) (similar)).

Thus, the caselaw supports the conclusion that the Permit System is not preempted insofar as it applies to non-consensual towing.

\* \* \*

Accordingly, the Court GRANTS each party's motion for summary judgment on the federal preemption claim in part and denies it in part. Specifically, the City's Permit System

is preempted to the extent it applies to drivers and/or firms engaged in consensual tows or tows passing through the City.[7] The City remains free to apply its Permit System to drivers and firms engaged in non-consensual towing in the City.[8] This Order is STAYED pending appeal. If no appeal is taken by the City, this Order will go into effect on January 15, 2011.

### B.   Seizure of Tow Trucks – CTTA's Fourth Amendment Argument

The City apparently has a practice of seizing the tow trucks of repeat offenders of the Permit System. CTTA challenges this practice as extra-statutory (the ordinances do not expressly provide for seizure) and unreasonable under the Fourth Amendment. This argument is rejected because questions about the reasonableness of police action are best resolved on their individual facts and not in a declaratory judgment action.

The only case CTTA cites in support of its argument is Automobile Club of New York, Inc. v. Dykstra, 423 F. Supp. 2d 279, 287 (S.D.N.Y. 2006). That case held that seizure of tow trucks in New York City was improper when based only on the failure to obtain a required license. Implicit in that holding was a prior determination that the New York City ordinances at issue were themselves invalid. Here, at least as applied to drivers and companies engaged in non-consensual tows, the Permit System is valid. Thus, there is no reason for a blanket prohibition against seizure of tow trucks following multiple offenses.

Accordingly, the City's Motion for Summary Judgment is GRANTED as to CTTA's Fourth Amendment claim.

### C.   The Dormant Commerce Clause

CTTA argues that the Permit System violates the dormant commerce clause. The dormant commerce clause is violated by local regulation if it "unjustifiably discriminate[s] on [its] face against out-of-state entities" or "impose[s] burdens on interstate trade that are clearly excessive in relation to the putative local benefits." Am. Trucking Ass'n v. Michigan Pub.

---

[7] To avoid any uncertainty, tows passing through the City are tows that originate and conclude outside the City. If a non-consensual tow originates or concludes in the City, that driver and any tow firm he is associated with are still subject to the Permit System.

[8] The City can continue to apply the Permit System to drivers and firms engaged in both consensual and non-consensual towing. The Permit System is preempted only to the extent it is applied to drivers and firms engaged exclusively in consensual towing.

11

Serv. Comm'n, 545 U.S. 429, 433 (2005) (internal quotations omitted).  Because the Permit System does not discriminate against out-of-state entities, the question here is whether it "impose[s] burdens on interstate trade that are <u>clearly excessive</u> in relation to the putative local benefits."  Id. (emphasis added).

Because the City does not apply the Permit System to tow trucks merely passing through the City (and, as a result of this ruling, cannot do so) the Permit System does not run afoul of the dormant Commerce Clause.  The fact that tow firms and/or drivers conducting non-consensual towing in San Francisco may have increased costs as a result of the Permit System does not show a "significant practical burden on interstate trade" where the costs are relatively modest and serve to effectuate an important public safety program.  Id. at 434.[9]

Accordingly, the City's Motion for Summary Judgment is GRANTED as to CTTA's dormant Commerce Clause claim.

### D.  The Court Declines to Exercise Jurisdiction over the State Law Claims

CTTA has moved for summary judgment as to two state law claims:  preemption and tax code violations.  A threshold question with respect to these claims is whether this Court ought to reach them at all.  The City argues that this Court should not do so because the state preemption and tax claims are not inextricably related to the federal claims and involve "novel or complex issue[s] of State law[.]"  See 28 U.S.C. § 1367(c).  The Court agrees.

This Court's decision on the cross motions for summary judgment ends the federal aspect of this case.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims."  Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); Dargis v. Sheahan, 526 F.3d 981, 991 (7th Cir. 2008) (affirming district court's decision not to exercise supplemental jurisdiction over pendant state law claims even though plaintiff was awarded

---

[9] CTTA cites only one case in support of its dormant commerce clause argument: Dykstra, 423 F. Supp. 2d at 282.  That court focused on New York City's permit system as applied to passers through and consensual tows in and out of the City headed for other states.  San Francisco does not apply its Permit System to passers through, and, as discussed, can no longer apply it to firms or drivers engaged only in the business of consensual towing in the City.

1 judgment on one of his federal claims because "we see no reason that a district court must
2 entertain [] state law claims, on which no other judicial resources have been expended, simply
3 because it disposed of a federal . . . claim in [plaintiff's] favor.").

4 Moreover, the state law claims raise issues that have not been addressed by the state
5 courts and concern important questions of state statutory construction.  Those matters are
6 better left to the state courts in the first instance.

### III. CONCLUSION

San Francisco's Permit System is preempted under federal law to the extent described above.  Thus, both the City's and CTTA's motions for summary judgment are granted in part and denied in part on the federal preemption issue.  The City's motion for summary judgment is granted as to CTTA's Fourth Amendment and dormant Commerce Clause claims.  Having resolved the federal claims, the Court declines to exercise supplemental jurisdiction over the novel questions of state law that CTTA also raises and remands this matter back to state court.  This Court's INJUNCTION against enforcement of the Permit System as to pass through and consensual towing is STAYED pending appeal.  If no appeal is taken by the City, the INJUNCTION goes into effect January 15, 2011.

**IT IS SO ORDERED.**

Dated:  December 7, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE